BERNARD P. SMITH *et al.*, Appellants, v. THE KNIGHTS
OF FATHER MATHEW, Respondent.

### St. Louis Court of Appeals, April 29, 1889.

**Benevolent Association:** FORFEITURE BY MEMBER. The laws of a benevolent association and the pledge given by each member prohibited the use of " all intoxicating drinks," and provided that " any member violating his pledge shall be by the very act suspended ; " and that " the suspension shall work deprivation of all rights and claims of membership pending trial." The application for membership contained a stipulation in these words : " That my suspension or expulsion from, or voluntarily severing my connection with the order, shall forfeit the rights of myself and my family or dependents to all benefits and privileges therein." A member held a certificate for the payment of two thousand dollars by the association to a beneficiary named therein, upon the death of the member, provided he was in good standing as such at the time of his death. The member drank whiskey on several occasions, but the fact was not known to the association until after his death. *Held:* The drinking of the whiskey by the member was a self-executing suspension of his membership, requiring no trial or adjudication of his expulsion, and was a deprivation of all rights, benefits and privileges pertaining thereto, so that the member was not in good standing at the time of his death, and there could be no recovery by the beneficiaries on the certificate.

*Appeal from the St. Louis City Circuit Court.*—HON.
DANIEL D. FISHER, Judge.

AFFIRMED.

*Henry Boemler*, for the appellants.

Every corporation shall make by-laws for its government and support and the management of its property, and therein provide, unless such provision is already made in its charter, for the admission of new members and how they shall be admitted, and prescribe their

qualifications. Provision may also be made, in such
by-laws, for the removal of officers for cause and for the
expulsion of members guilty of any offense which affects
the interests or good government of the corporation, or
is indictable by the laws of the land. Provided,
always, that such by-laws shall be conformable to the
charter of such corporation, and shall not impair or
limit any provision there of or enlarge its scope, and
shall not be contrary to the provisions of the constitu-
tion or laws of this state. R. S. 1879, sec. 980; *Mulroy
v. Knights of Honor*, 28 Mo. App. 463; *State v. Odd
Fellows*, 8 Mo. App. 148; *Ludowiski v. Society*, 29 Mo.
App. 337; *Seibert v. Chosen Friends*, 23 Mo. App. 268;
*Society v. Weatherly*, 75 Ala. 248. The court committed
error for failing to render judgment for the plaintiff for
the reasons that Smith was never suspended or expelled,
his assessments and dues were all paid at the time of
his death and he was therefore a member in good stand-
ing in the supreme and subordinate bodies. *Mulroy v.
Knights of Honor*, 28 Mo. App. 463; *Grand Lodge v.
Elsner*, 26 Mo. App. 108; *Ludowiski v. Society*, 29 Mo.
App. 337; *Benefit Association v. Beck*, 77 Ind. 203; *Aid
Association v. Riddle*, 91 Ind. 84; *State v. Odd Fel-
lows*, 8 Mo. App. 148; *Society v. Weatherly*, 75 Ala. 248;
*Fritz v. Muski*, 62 How. Pr. 74; *Seibert v. Chosen
Friends*, 23 Mo. App. 268. A condition that a contract
of life insurance shall be void, on account of any misrep-
resentation in the application, makes the contract
voidable only at the election of the insurer. The condi-
tion may be waived even after death of the insured.
The receipt of dues or assessments with knowledge of
the facts will constitute a waiver. *Pisquesard v.
Libby*, 7 Mo. App. 564; *Aid Association v. Riddle*, 91
Ind. 84; *Benefit Association v. Beck*, 77 Ind. 203; *Arm-
strong v. Turgnand*, 9 Irish C. L. 32 S. L.; *Viel v. Ins.
Co.*, 26 Iowa, 1; *Tuttle v. Ins. Co.*, 19 Barb. 449;
*Leszensky v. Knights of Honor*, 31 Fed. Rep. 248; *Home*

*Protection v. Avery,* 10 Southern Rep. 143. Smith was entitled to a notice, or should have been suspended and entitled to a trial by the constitution and by-laws before he could be expelled and lose all right under the certificate. *Seibert v. Chosen Friends,* 23 Mo. App. 268; *Pisquesard v. Libby,* 7 Mo. App. 546; *Mulroy v. Knights of Honor,* 28 Mo. App. 463; *Ludowiski v. Roman Catholics,* 29 Mo. App. 337; *Bosgrach v. Knights of Honor,* 22 Mo. App. 143; *Olmistead v. Ins. Co.,* 50 Mich. 200; *People v. Benefit Society,* 24 How. Pr. 224; *People v. Benefit Society,* 6 Thompson & C. 88; *Wood v. Wood,* L. R. 9 (Ex.) 198; *Fritz v. Much,* 62 How. Pr. 74; *Chamberlin v. Lincoln,* 129 Mass. 70; *Wachtel v. Widows & Orphans' Society,* 84 N. Y. 28. Forfeitures are not favored in law, and the courts look with extreme reluctance on any proceedings toward this end. Dill. Mun. Corp. [3 Ed.] sec. 345.

*Campbell & Ryan,* for the respondent.

The application, certificate issued and the laws therein referred to, made the contract of insurance between defendant and the assured; it is to be construed like any other contract, and the assured is barred thereby. *Coleman v. Knights of Honor,* 18 Mo. App. 189, 139, 194; *Borgraefe v. S. L. K. & L. of Honor,* 22 Mo. App. 127–142; *Grand Lodge v. Elsner,* 26 Mo. App. 108–114; *Mulroy v. Knights of Honor,* 28 Mo. App. 463–472. Under the laws of the order, which were binding on the deceased, the very act of violating the pledge, and not subsequent suspension or expulsion, caused the forfeiture; a trial was not a prerequisite. *Royal Templars of Temperance v. Curd,* 111 Ill. 284; *Hogins v. Champions of the Red Cross,* 18 Pac. Rep. (Cal.) 123; *Borgraefe v. S. L. K. & L. of Honor,* 22 Mo. App. 127–142–143; *Mulroy v. Knights of Honor,* 28 Mo. App. 463–468; *Benevolent Society v. Baldwin,* 86 Ill. 479; *Road v. R. P. & F. B. M. B. Ass'n,* 31 Fed.

Rep. 62-64. The defendant did not receive assessment from deceased with knowledge of the facts creating the forfeiture, and the doctrine of waiver does not apply. Bacon on Benefit Socities, sec. 420-1-2-3 ; *Borgraefe v. S. L. K. &. L. of Honor*, 22 Mo. App. 126-140, *et seq.; Ill. M. B. S. v. Baldwin*, 86 Ill. 479-485-6.

BRIGGS, J., delivered the opinion of the court.

The plaintiffs are the children and heirs-at-law of Minnie and Bernard Smith, both deceased, and they sue to recover of defendant the value of a certificate of insurance, alleged to have been issued by defendant, on the life of Bernard Smith, and made payable to the said Minnie, or in the event of her death, prior to that of the assured, to the children of the said parties.

The defendant is a benevolent institution, and in 1881, was incorporated under the laws of this state, relating to the incorporation of benevolent societies, etc. The fundamental principle of the order is the encouragement of temperance and the enforcement of total abstinence from the use of intoxicants by its members. The order consists of a supreme and subordinate councils. The articles of incorporation and the constitution of the order provide for the establishment of subordinate councils and also provide rules and regulations for their government.

The defendant also had an insurance feature, by which it issued certificates to its members, in which defendant, upon certain conditions set forth in the constitution, by-laws and certificate, obligated itself to pay to the beneficiary named in any such certificate, the amount of money which would be realized from a certain sum assessed against all members of the order in good standing, at the time of death of the assured.

The case was submitted to the court without a jury, and on the trial, the following facts were admitted to be true, to-wit:

*First.* That Bernard Smith became a member of the order on or about the ninth day of August, 1881.

*Second.* That at the time he was admitted to membership, he took the following pledge, to-wit: "I promise with the divine assistance, to abstain from all intoxicating drinks, including cider, malt, and fruit liquors, and to discountenance by advice and example intemperance in others. And I do further pledge myself to faithfully obey and support the constitution, laws, by-laws, rules, and regulations of this order, and labor to the best of my ability to advance its objects and to promote the welfare, spiritual and temporal, of my fellow members."

*Third.* That a certificate was, by defendant, issued to him, in which his wife, Minnie Smith, was named as the beneficiary. That the defendant then agreed to pay the said Minnie at the death of her said husband, a sum of money not exceeding two thousand dollars, upon evidence received of the death of the husband, provided the latter should pay his contributions to the relief fund, *i. e.*, pay his assessments; and further that the said Bernard should, after the issuance of said certificate, *obey* and *observe* the *laws* and *regulations* of the order, and should be a member of the order in *good standing* at the time of his death.

*Fourth.* That Minnie Smith died about July 21, 1887, and Bernard Smith died about November 9, 1887, without having named any other beneficiary in said certificate.

*Fifth.* That at the time of the death of Bernard Smith, all assessments against him were paid.

*Sixth.* That the laws and by-laws of the corporation, and mentioned in defendant's answer, were in full force and operation while deceased was a member.

*Seventh.* That Bernard Smith, on the twenty-first day of July, 1887, took a drink of whiskey in a saloon in the city of St. Louis, and that just prior to his death, at other times and places, he drank intoxicants.

*Eighth.* That this was unknown to the order prior to his death.

The laws of the order referred to, and set out in defendant's answer, are as follows, to-wit: Law 6, section 1. " Any member *violating his pledge shall be by the very act suspended,* and when *proved* guilty shall be *expelled,* the expulsion to date and take effect from proved date of violation of pledge."

Section 2. " The *suspension* shall work *deprivation* of all rights and claims of membership pending trial."

The answer then alleged the mode and manner of the trial of members charged with a violation of the laws of the order, the details of which are not necessary to be embodied in this opinion. It was admitted that no charge had ever been preferred against deceased, and that he had neither been suspended nor expelled by any action of the subordinate council to which he belonged.

In the application made by the deceased for the insurance, he, among other things, consented and stipulated as follows : " That my *suspension* or *expulsion* from, or voluntarily severing my connection with, the order, shall *forfeit* the *rights* of *myself* and *my family* or dependents to all benefits and privileges therein. I agree to make punctual payments of all dues and contributions for which I may become liable and to conform in all respects to the *laws, rules,* and *usages* of the order now in force, or which may hereafter be adopted by the same."

The only question presented by this record for our determination relates to the effect of the violation of the pledge of total abstinence by the deceased. The trial court held, and so declared as the law of the case, that the violation by Bernard Smith of his pledge of total abstinence *of itself* worked a *forfeiture* of all rights under the certificate from the date of the violation ; and that notwithstanding the fact that no charges were preferred against Smith in the subordinate council to which he belonged, and no trial had of the alleged

offense, yet by reason of the *use* of *intoxicants*, Smith was not, within the meaning of the laws of the order, a member in *good standing*, at the time of his death, provided these violations of laws and regulation by Smith, were unknown to defendant, so as to permit defendant to bring deceased to trial for a violation of his obligations.

The plaintiffs excepted to the declarations of law given by the court.

The constitution and laws of a voluntary association are in the nature of a contract between the members, and all are bound by its provisions by reason of the assent of the members in assuming the obligations and duties of membership. And in the case at bar the terms and conditions of the application of the deceased for the insurance, and the certificate issued to him by defendant, should, in connection with the laws of said society, be considered in determining the liability of defendant under the certificate of insurance issued by it.

The deceased, in the pledge taken by him, agreed to abstain from the use of all intoxicating drinks. Law 6, section 1, of the society provides : "Any member violating his pledge shall be *by the very act suspended*, and when proved guilty shall be expelled." Section 2. "The suspension shall work deprivation of all rights and claims of membership pending trial." In the application of deceased he expressly agreed that his "*suspension or expulsion* from the order" should work a forfeiture of all rights under the certificate. The defendant, by the certificate issued by it to Bernard Smith, agreed to pay at the death of the assured, provided the latter was a member in *good standing* in the order at the time of his death.

Counsel for appellants contends that a fair and reasonable construction of the contract as made up and constituted by the laws of the society, the application for membership by deceased, and the certificate issued

by defendant, required a trial and conviction of deceased for the violation of his pledge, as a condition precedent, to a forfeiture of all rights of recovery under the certificate.

We cannot adopt this view of the contract. It manifestly appears that suspension was made a *result* of the violation of the pledge, and was not to be brought about by the judgment of the council to which deceased belonged. So far as the *suspension* of a member was concerned it is quite apparent that it was intended that the law should be self-executing. The *expulsion* of a member only followed after it had been established by evidence that the member had violated the law. This would necessarily involve a trial. If the law of the order only provided that expulsion should work a forfeiture of all rights under the certificate, then the right of recovery would be clear; but as we have seen, *suspension* is sufficient to take away the right; and that a violation of the pledge of total abstinence by a member, of itself, resulted in a suspension and a deprivation of all rights of membership. This is a reasonable regulation, because the fundamental principle of the order is to prevent its members from using intoxicating liquors. The language used, both in the laws of the society and the application for membership, is so plain and unambiguous, that no room is left for construction. It must be presumed that each member fully understood the nature of his contract with defendant and knew the penalty for the violation of its fundamental law.

The facts in case of *Royal Templars v. Curd*, 111 Ill. 284, are almost identical with those of the case now under consideration. In discussing the effect that a violation of the pledge of total abstinence, by a member, would have upon his right to recover from the society, the court said: "There cannot be the slightest ground for pretending that a violation of the pledge of

total abstinence does not, *of itself*, forfeit all rights of recovery upon the certificate."

In case of *Hogins v. Supreme Council*, 18 Pac. Rep. 125, the facts were quite similar to those of the case at bar. The plaintiff's contention in that case was that the simple violation of the pledge of total abstinence by the assured was not sufficient within itself to work a forfeiture of the policy. But the court (supreme court of California), in passing on this question, said : "It is sufficient to say here that Hogins agreed, among other things, not to drink alcoholic liquors, and that he wilfully broke the condition in violating the fundamental and controlling principle of his obligation and of the order. * * * We do not think that suspension or expulsion was necessary by the order to forfeit the policy."

The certificate of membership provided that defendant shall pay the value of the certificate to those entitled to receive the same, provided the deceased was, at the time of his death, a member in *good standing*. Appellants' argument of this question is that as Bernard Smith paid all dues up to the time of his death, and had never been suspended or expelled, that it necessarily followed that he *was a member in good standing when he died*. What is meant by the words, "good standing?" In *Royal Templars v. Curd, supra*, the supreme court of Illinois said: "Good standing, in a society, not only implies that a party is a member of the society, but that he has a good reputation therein. In the present instance, the words are to be construed with reference to the language of the certificate, and when this is done, they manifestly mean not only good reputation, but good conduct, *i. e.*, freedom from a violation of the pledge of total abstinence."

We are of the opinion that the trial court took the correct view of the law in this case, and the judgment will therefore be affirmed. All the judges concur.