## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1903.

*( Continued from Volume 103.)*

LAVIN, Respondent, v. GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF MISSOURI, Appellant.

St. Louis Court of Appeals, January 19, 1904.

1. **LIFE INSURANCE: Mutual Beneficiary Associations: Forfeiture of Benefit: Self-Executing By-Laws: Notice.** Where the by-laws of a mutual beneficiary association provide that a failure by a member to pay his assessment on or before a certain day shall work, *ipso facto*, a suspension and forfeiture of all right under any beneficiary certificate issued to such member, without any action on the part of the lodge, such provision constitutes a valid agreement between the lodge and the holder of the certificate; and he is not entitled to notice or a hearing before suspension for such failure.

2. ———: ———: ———: **Waiver.** The officer of a subordinate lodge in a beneficiary association, who is not an agent of the grand 'lodge, has no power to waive a by-law of the order.

3. ———: ———: ———: ———. Where the laws of a benefi-ciary association require monthly assessments to be paid on or before a certain day of each month, which assessments are required to be collected by the subordinate lodges and re-mitted to the grand lodge on or before the first day of the suc-ceeding month, and where the officer of a subordinate lodge, whose duty it was to collect such assessments, was accustomed to receive them after the day provided for the payment, but it was not shown that any officer of the grand lodge had any knowledge of the practice of receiving assessments after they were due, such practice does not constitute a waiver of the requirement as to the time of payment so as to prevent a sus-pension, authorized for non-payment.

4. ———: ———: ———: **Evidence.** In an action by the benefi-ciary in a death certificate in a mutual beneficiary order, where the defense is abandonment of the order by the insured, a let-ter purporting to be written by the beneficiary, the widow of the insured deceased, appealing to the order for aid and ad-mitting that he had failed to pay his dues, is admissible in evidence, although she denies having written or sent such let-ter and it was not addressed to anybody, where the financier of the local lodge testified that she asked him to intercede with the lodge in her behalf, and he told her to write to the lodge and that afterwards the letter was handed to him by her or one of her daughters, it being a question for the jury to de-termine whether she wrote it making such admissions or not.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED AND REMANDED.

*F. H. Bacon* for appellant.

(1) Non-payment of an assessment works *ipso facto* a suspension. The laws of the order provide that non-payment of an assessment on or before the twenty-eighth day of the month shall work *ipso facto* a suspen-sion and forfeiture, and that no action on the part of the lodge or any officer thereof shall be required as essential to such suspension. This provision was also valid and binding upon the member. Borgraefe v. Knights of Honor, 22 Mo. App. 127; Harvey v. Grand

Lodge, 50 Mo. App. 472; Curtin v. Grand Lodge, 65 Mo. App. 294; Scheele v. State Home Lodge, 63 Mo. App. 277. (2) The same rule applies if certain conduct of the member works a forfeiture. Smith v. Knights of Father Mathew, 36 Mo. App. 184. The doctrine is also supported by cases in the Supreme Court as well as in the Federal Court. Ellerbe v. Faust, 119 Mo. 653; Reichenbach v. Ellerbe, 115 Mo. 588; Modern Woodmen v. Tevis, 117 Fed. 367; Rood v. R. R. Passenger, etc., Ass'n, 31 Fed. 162. (3) Subordinate lodge officers have no power to waive. It was not within the power of Standard Lodge, nor its financier, nor any other officer of the lodge, to waive or dispense with any of the requirements of the laws of appellant order. If the financier could, by a custom unknown to the grand lodge, change its by-laws, he could make a new contract with the member without the knowledge of his principal. This court has always recognized this principle. Chadwick v. Order of Triple Alliance, 56 Mo. App. 463. And the rule is supported by a long list of decisions, notably, Supreme Lodge v. Keener, 25 S. W. 1085; McDonald v. Chosen Friends, 78 Cal. 49; 20 Pac. 41; Eaton v. Supreme Lodge, 22 C. L. J. 560; Fed. Cas. 275; re-reported, 28 N. E. 1123, and there approved by the Supreme Court of Illinois; McCoy v. Roman Catholic, 152 Mass. 272; 25 N. E. R. 289; Sweet v. Society, etc., 78 Me. 641, 7 Atl. 394; Kocher v. Supreme Council, etc., 48 Atl. 544; Ins. Co. v. Van Winkle, 12 N. J. Eq. 333-342; Hale v. Ins. Co., 6 Gray 169; Brewer v. Ins. Co., 14 Gray 203; Miller v. Association, 42 N. J. Eq. 459, 7 Atl. 895; Id., 44 N. J. Eq. 224; 10 Atl. 106; 14 Atl. 278; Mulrey v. Ins. Co., 4 Allen 116; Evans v. Ins. Co., 9 Allen 329; Lyon v. Supreme Assembly, 153 Mass. 83, 26 N. E. 236. (4) Certain evidence offered by appellant was wrongfully excluded. The court erred in exclusion of the letter purporting to be from plaintiff, which, it was shown, was either given to the financier of the lodge by plaintiff or her daughter in response

to a request for such letter.   This was an admission by plaintiff which was binding upon her, and, if the authenticity of the letter was questioned, it was an issue to be passed on by the court.   (5)   The acts of the financier amounted only, if anything, to a neglect to enforce a condition of reinstatement, which he had no power to do. If the financier had the custom to accept payment of assessments after the twenty-eighth day of the month in which they were payable and before the report was sent off, on, or about the twelfth day of the following month, such act, if anything, amounted only to a failure to enforce the provision of the by-laws requiring the reinstatement of a suspended member by a vote of the lodge, because, under the contract, the member had a right to reinstate himself by simply paying up within thirty days after the suspension, provided the lodge by a vote consented, which the testimony shows the lodge always did.   Moreover, such act of the financier was unauthorized and beyond the power conferred by the by-laws, and the grand lodge was not shown to have any knowledge of the custom or to have consented thereto.   Carlson v. Supreme Council, etc., 115 Cal. 466, 47 Pac. 375; Grand Lodge v. King, 10 Ind. App. 639, 38 N. E. 352; Graves v. M. W. of A. (Minn.), 89 N. W. 6; Rice v. Grand Lodge, etc., 92 Iowa 417, 60 N. W. 726; Woodmen of the World v. Rothschild (Tex.), S. W. 553; Wells v. Independent Order, etc., 25 Canadian L. Journal (N. S.) 209; Lyon v. Sup. Assembly, etc., 153 Mass. 83; Grand Lodge v. Jesse, 50 Ill. App. 101; Knights of Honor v. Oerters, 95 Va. 610.   (6)   Lavin acquiesced in his suspension and abandoned the order. Under the laws of appellant order, Lavin was bound to pay an assessment every month.   Even admitting, which would be unwarranted by the evidence, that he had tendered the September assessment and the same was refused, that did not excuse him from tendering subsequent assessments or from making some inquiry into the matter, which he did not do.   The evidence shows

that the amount of $2 was tendered after the twelfth of October, which was insufficient; and that the financier explained the state of the account, and notified Lavin of his suspension, and what must be done in order to get back into the order, after which Lavin made no further payments nor effort to become reinstated but acquiesced in the suspension and abandoned the order. We contend that the following cases support the doctrine contended for: Borgraefe v. Knights and Ladies of Honor, 26 Mo. App. 226; State ex rel. Stone v. Grand Lodge, 78 Mo. App. 546; Stewart v. Supreme Council, 36 Mo. App. 319; Glardon v. Knights of Pythias, 50 Mo. App. 45; Supreme Lodge v. Wilson, 66 Fed. 785; Ryan v. Life Ass'n, 96 Fed. 786; Mutual Life Ins Co. v. Allen, 178 U. S. 351; Grand Lodge A. O. U. W. v. Scott (Neb.), 95 N. W. 191.

*James J. O'Donohoe* for respondent.

(1) Defendant's law, 107, which provides that the failure to pay an assessment on or before the twenty-eighth day of the month in which it falls due, works a forfeiture *ipso facto,* is unconstitutional. It contravenes the constitution of Missouri, which provides: "That no person shall be deprived of life, liberty or property without due process of law." Art. 2, sec. 30, Constitution of Missouri, p. 67 (Bill of Rights). Such a by-law is unreasonable, and where a by-law is unreasonable it is void. State ex rel. v. Merchants Exchange, 2 Mo. App. 96. (2) Even if the appellant's law with respect to forfeitures where the member fails to pay his assessment on or before the twenty-eighth day of each month were valid, yet it would not be available as a defense here, because it has been waived by appellant's course of dealing. Courtney v. Police Relief Ass'n, 73 S. W. 878; Sheehorn v. Catholic K. of A., 95 Mo. App. 233; Puhr v. Grand Lodge, 77 Mo. App. 47; Lewis v. Association, 77 Mo. App. 586; McMahon v. Knights of the

Maccabees, 151 Mo. 522; Hanley v. Association, 69 Mo. 380; James v. Mutual Reserve, etc., Ass'n, 148 Mo. 1; Frame v. Woodmen of the World, 67 Mo. App. 127; Thompson v. Ins. Co., 52 Mo. 469; Hawthorne v. Ins. Co., 5 Mo. App. 73. (3) "Forfeitures are not favored and the courts are always ready to seize hold of any circumstance that can reasonably avoid so harsh a measure as forfeiture." Bacon on Benefit Societies, pp. 767, 772, secs. 362, 377, 379, 389. And the same rule with respect to forfeitures and suspension apply to benefit societies as it does to general insurance. Seibert v. Supreme Council, 23 Mo. App. 268. (4) By-laws working a forfeiture of membership in an association are not favored, and should be construed so as to avoid the forfeiture, if the language employed, considered in connection with other by-laws, will admit of such a construction. Connelly v. Benefit Society, 43 Mo. App. 283. (5) "Where the laws (or custom) of an association require notice to be given of assessments, the right of a member can not be forfeited by the non-payment of an assessment of which he had not notice." Agnew v. A. O. U. W., 17 Mo. App. 254; Seibert v. Chosen Friends, 23 Mo. App. 268; Mulroy v. Knights of Honor, 28 Mo. App. 463. (6) The law does not favor forfeitures and slight evidence is enough to show a waiver. Bacon on Benefit Societies, sec. 389, p. 767. The evidence here manifestly establishes a waiver. 2 Bacon on Benefit Societies and Life Ins. (2 Ed.), sec. 361, p. 712. (7) The deceased, having been sick, could not be suspended. Hoeffner v. Grand Lodge, 41 Mo. App. 359. It was "compulsory" on the appellant to pay the assessments of the deceased during his illness. Respondent's Law 106. And where the assessment has been tendered, as in the present case, there can be no forfeiture. 2 Bacon on Benefit Certificates and Life Ins. (2 Ed.), 723 to 725 (and cases cited).

### STATEMENT.

The defendant is a fraternal beneficiary association having grand and subordinate lodges. Prior to July 24 1901, Patrick Lavin had taken the workman degree of the order and was a member of Standard Lodge No. 80, and had received from the grand lodge, a beneficiary certificate, No. 53366, insuring his life in the sum of $2,000, payable at his death to his wife, Annie Lavin, the plaintiff. On July 24, 1901, Patrick Lavin died. The defendant refused to pay the insurance and this suit was brought to enforce its payment.

There are two defenses set up by the answer. First, that Patrick Lavin failed and neglected to pay the monthly assessment of $2.62 for the month of September, 1900, as required by the laws of the order, on or before the twenty-eighth day of said month, by reason of which failure the certificate sued on *ipso facto,* under the laws of the order, became null and void. Second, on November 1, 1900, Patrick Lavin abandoned his membership and severed his connection with the lodge. It was shown by the laws of the order that each member is required to pay a monthly assessment for the purpose of providing a fund to meet death losses, and that special monthly assessments for the same purpose may be made from time to time by the grand officer of the order, when the death losses are more than normal. These assessments are classified according to the ages of the members and increase with their ages. The monthly assessments of the members of the age of Patrick Lavin for September, 1900, was $2.62. In addition to this assessment, each member of a subordinate lodge is required to pay in advance one dollar per quarter as quarterly dues. The income from quarterly dues is used for the purpose of defraying the expenses of the grand and subordinate lodges and to pay the salaries of the officers.

Law 196 of the order is as follows:

"*Levy and Payment of Assessments.*—Every member of the order who has received the workman degree shall, beginning with the month following his initiation, on or before the twenty-eighth day of each month, pay to the financier of the lodge of which he is a member, or if a member of a defunct lodge, or a lodge remaining suspended for more than ten days, to the grand recorder, one assessment according to the foregoing rates."

Law 197 is as follows:

"*Suspension for Non-Payment of Assessments.*—A failure or neglect of any member to pay any assessment on or before the twenty-eighth day of the month in which the same is payable to the financier of his subordinate lodge, or to the grand recorder, as provided by law, shall work *ipso facto* a suspension and forfeiture of all rights under any beneficiary certificate issued to him to whomsoever the same may be payable, and no action on the part of the lodge or any officer thereof shall be required as essential to such suspension and forfeiture.

"Any person suspended or expelled from the order for any cause whatever, forfeits all claim to the beneficiary fund during suspension or expulsion."

The order has an official organ, called "The Overseer," issued monthly and mailed free to every member. It was admitted that Patrick Lavin received the September, 1900, number of the Overseer. This number contained the following:

"St. Louis, Mo., Sept. 1, 1900.
"To officers and members of subordinate lodges A. O. U. W., in Missouri.

"Brethren: You are reminded that under the laws of the order one assessment under the classified plan, according to age is payable on or before the twenty-eighth day of September, 1900, by all members who have received the workman degree before the first day of September, 1900.

"This assessment will be known officially as assessment No. 9 of 1900.

"For the information of members I certify that the following deaths of members of the order in good standing in their respective lodges have been officially reported to me since my last monthly report:

(Here follows list of deaths, which is omitted as immaterial.)

"*No Notice of Assessment Required—Members not Paying Stand Suspended.*—The laws of the order do not provide for any notice of assessments either to lodges or members, but that every member of the order who has received the workman degree shall, beginning with the month following his initiation, on or before the twenty-eighth day of each month, pay to the financier of the lodge of which he is a member, or, if a member of a defunct lodge, or a lodge suspended for more than ten days, to the grand recorder, one assessment according to the classified rates according to age. If such assessment is not paid on or before the twenty-eighth day of the month the member stands suspended, and can only be reinstated on compliance with the laws relating to reinstatement.

"LODGES MUST PAY PROMPTLY.

"Subordinate lodges, on the first day of each month, are required by law to forward to the grand recorder, the amount then in its benficiary fund, which should be equal to one classified assessment, according to age, for all the members of the lodge in good standing on the twenty-ninth day of the previous month, and such sums as have been received since the last report for reinstatements. Such assessment, payable by the lodge, is due on the first day of each month, is delinquent after the eighth of the month, and if not paid on or before the fifteenth of the month when due, the lodge stands suspended and can only be reinstated upon paying all arrearages of assessments and their indebtedness

to the grand lodge, together with a fine of five cents per member for each assessment unpaid, and with the consent of the grand master workman.

"No officer of the grand lodge nor of any subordinate lodge has any power to waive or dispense with any of the provisions or requirements of the laws of the order, and all lodges and members must understand that the laws of the order must and will be strictly enforced.

"Yours in C., H. & P.,
"HENRY W. MEYER,
"Grand Recorder."

Other laws of the order provide for a reinstatement of a beneficiary certificate after three months, and after six months, but they are of no importance in this case as no application was made by Lavin at any time for reinstatement.

John Walsh was the financier of Standard Lodge No. 80. He testified that the assessments collected in any one month, he transmitted to the grand recorder early in the next succeeding month, usually about the eleventh or twelfth; that with the remittance, he transmitted a report of the membership of his lodge and the names of those who were suspended for failure to pay the assessments of the previous month, and that he, as financier, was required to pay to the grand recorder, the full amount of the assessments of all members of his lodge not reported as suspended for non-payment of assessments. He testified that his report to the grand lodge for September, 1900, was made out on the twelfth of October, 1900; that Patrick Lavin failed to pay the September, 1900, assessment and when he made his report, he reported Lavin as suspended for non-payment of the September assessment. This report was introduced in evidence and showed under the head of "Decrease of membership since last report, Patrick Lavin, whose certificate is No. 53366, forty-seven years

old, rate of assessment $2.62, date of suspension, 9—29, 1900.'' He further testified that it was his habit to receive monthly assessments from any member of his lodge, if paid at any time before he made up his monthly report and when so paid, he did not report him as suspended, although the payment was made after the twenty-eighth day of the previous month, and that Patrick Lavin had frequently paid his monthly assessments, prior to September, 1900, later than the twenty-eighth of the month, the day on which it was payable, and had been reported as having paid on the twenty-eighth of the month. He further testified that Patrick Lavin, nor anyone for him, on the twenty-eighth of September, 1900, or on any day prior to the making and forwarding of the report for that month, had paid or offered to pay the September, 1900, assessment, and that it had at no time been paid or tendered. He also testified that for the accommodation of the members of his lodge, he had authorized his daughter to receive payment of their assessments at his home.

He further testified that in the spring of 1902, the plaintiff came to him about the certificate of insurance; that he advised her to write a letter to the lodge and give it to him and he would present the letter to the lodge; that a few days afterwards, she or one of her children handed him a letter which he gave to the recorder of the lodge. Plaintiff swore she could not write and that she did not authorize anyone to write to the lodge for her, and that she neither gave or sent a letter to Walsh. The letter was offered in evidence by the defendant, but was excluded by the court. It reads as follows:

"St. Louis, Mo., April 17, 1902.

"Dear Sir (not addressed to anybody): I am writing you this letter to ask assistance for myself and five helpless children. My husband, Patrick Lavin, died nine months ago. He was a member of your lodge. I

was unable, utterly unable, to keep up payments of his lodge, so he fell back during the strike, was never able to catch up. He was in poor health, but always tried to keep on his feet, and to work, as we had no other support than his wages, which were $1.25 per day. Now since he is dead I am left to pay rent, get food and clothing and support myself and five children. I have got heart trouble, and of a very delicate constitution, and not really able to work to support such a heavy charge. I would be very grateful and appreciate any assistance given me from the brotherhood.

> "Yours very respectfully,
> "MRS. PAT. LAVIN."

The minutes of the lodge show that the letter was read in open lodge and referred to a special committee.

Walsh testified that sometime in October, 1900, after his report had been made up, as he remembered, Patrick Lavin's little girl came to his house one evening and offered to pay him two dollars on her father's assessment for September, 1900; that he told her it was not enough and refused to receive the money; that on a previous occasion, Lavin had paid but two dollars on his assessment and he (witness) made up the balance, sixty-two cents; that he never got this back and he could not afford to keep up this practice of paying for Lavin. That Lavin's little boy, a few days after the girl had been at his house, came to the house and offered to pay him some money on the September assessment, but that he did not have enough money to pay it, and he refused to take the money and told the boy that it was not enough. The little girl testified that she offered Walsh three dollars on the third day of September, 1900, but he would not take it, saying it was not enough, and the boy swore that a few days after his sister had been to Walsh's, he went there and offered to pay him five dollars, but he would not take it, saying it was not enough to pay Lavin's assessments and dues. Walsh flatly

denied that either the boy or girl offered to pay him any money whatever in the month of September, 1900, and that the offers they did make, were in October and after his report of the September assessments had been made up, and that neither the boy or the girl offered enough money to pay Lavin's September assessment. Walsh testified that he told Lavin's children, in October, to tell Lavin he had been suspended, but he did not see Lavin personally to notify him.

The minutes of the meeting of the lodge on October 28, 1900, show that Patrick Lavin was reported suspended.

The plaintiff put in evidence the laws of the order, in respect to sick benefits, to the effect that the assessments of sick members, in certain circumstances, should be paid by his lodge, also evidence that Patrick Lavin was sick in the fall of 1900, but offered no evidence that Patrick Lavin notified his lodge of his sickness or made claim for any sick benefits, nor that any member of the lodge had been informed or knew that he was sick.

The issues were submitted to the court sitting as a jury, who found for the plaintiff and rendered judgment for the full amount of the certificate of insurance with interest.

The court handed down the following memorandum of its finding and opinion, which is incorporated in the abstract and which we here copy for the purpose of showing the views entertained by the court and the reasons given for its conclusion:

"The production of the benefit certificate issued by defendant to Patrick Lavin, which has never been surrendered, together with the proof of Lavin's death, and the refusal of defendant to make payment of the amount called for by the certificate, made plaintiff's prima facie case and threw the burden of proof on the defendant.

"Plaintiff pleaded two defenses: The first one, the suspension of Lavin as a member of defendant's order for failure to pay the monthly assessment of $2.62 for

the month of September, 1900, which he was required to pay by the by-laws of the order on or before the twenty-eighth day of September, 1900. The second defense pleaded was that: On the last day of November, 1900, said Lavin abandoned his membership in said order and severed his connection therewith whereby his benefit certificate issued to him became void.

"For the first defense plaintiff relies upon the provisions of law 197 of defendant order to the effect that failure of a member to pay any assessment on or before the twenty-eighth day of the month in which the same is payable, shall work *ipso facto* a suspension and forfeiture of all right under any beneficiary certificate issued to him. To this defense of defendant plaintiff has by reply pleaded waiver. It was clearly shown by the evidence that it was the universal custom of the lodge to which defendant belonged to grant the members, whenever desired by them, an extension of about twelve or fifteen days and that the benefit of this custom had been repeatedly extended to Lavin, deceased. It is our view that the adoption of this custom constituted waiver of the provision of law 197 and the method of suspension pursued by defendant, to-wit: That of waiting until the financier made his report to the grand lodge before deeming the suspension to have taken place and then dating the suspension back to the twenty-eighth of the previous month was not justified by the by-laws, and that before effective suspension could be had in this adopted manner notice should have been given to the member. No notice was given to Lavin. It is therefore the court's view that the pretended suspension of Lavin for failure to pay the assessment due on September twenty-eighth is a nullity and constitutes no defense to plaintiff's claim.

"While the court is inclined to the view that a member of a beneficiary organization is not entitled because of a void suspension to lay back and refuse to pay further dues and at the end of a long period of delin-

quency claim his right that such course of conduct would constitute an abandonment of membership, yet in the case at bar a reading of the entire record fails to show any evidence of Lavin's abandonment of his membership. There is not one word of evidence to show what his relations to the association were between September or October of 1900, and July, 1901, the date of his death. Defendant offered in evidence a letter containing an admission of plaintiff that Lavin had not paid his dues, but this letter was properly excluded by the court for it was not shown by defendant that it was written by or under authority of plaintiff. The question asked of plaintiff as to her knowledge, at the time of demanding payment of the grand lodge, that Lavin had not paid his dues for nine months elicited the reply that she did not know this to be a fact. No other effort was made to ·prove abandonment of his membership by Lavin. If such were the case, defendant could easily have proved it by its officers—this it chose not to do and leaves the case without any evidence of abandonment.''

The instructions given are in harmony with the views as expressed in the opinion of the trial judge and need not be quoted.

BLAND, P. J. (after stating the facts as above).— 1. Law 197 of the order, which provides that failure of a member to pay any assessment on or before the twenty-eighth day of the month in which the same is payable, shall, *ipso facto* suspend his beneficiary certificate, is attacked by the plaintiff as being harsh, unconstitutional, and not self-enforcing. She contends that under all circumstances, a non-paying member of a beneficiary association is entitled to notice and to a hearing under the laws of the land, before he can be lawfully suspended, and the cases of Seehorn v. Catholic Knights of America, 95 Mo. App. 233; State ex rel. v. Merchant's Exchange, 2 Mo. App. 96; Lewis v. Benefit Ass'n, 77 Mo. App. 586, and McMahon v. Maccabees, 151 Mo. 522, are

cited as supporting this contention.    In the Seehorn
case, it appears that any branch of the order was per-
mitted to carry a delinquent member by paying his as-
sessments to the grand body, and that when it tired of
this, the president of the branch might suspend the mem-
ber.    The member attempted to be suspended was in ar-
rears for three assessments, which his branch had paid
for him.    The branch became tired of paying his as-
sessments and by vote suspended him and entered its
action on the minutes of its proceedings.    The president
then verbally proclaimed him suspended.    It was held
that the action of the branch was void, for the reason
the power to suspend was not vested in the branch, and
that the president could not suspend by a mere oral
proclamation, and that the member was entitled to no-
tice and a hearing.    In State ex rel. v. Merchant's Ex-
change, supra, a by-law of the exchange, which com-
pelled members to submit their business controversies
to arbitration, on pain of suspension or expulsion, was
held unreasonable and void.    In this case it was held
that membership in the Merchant's Exchange was a
property right.    In Lewis v. Benefit Ass'n, supra, the
laws of the order provided that the benefit certificate is
annulled by the suspension of a member and the by-laws
of the subordinate council of the order provided that
any member, thirteen weeks in arrears for dues, for-
feited all rights and privileges.    The deceased was in
arrears for twenty-four weeks' dues, but was never for-
mally suspended by the order.    It was held that the for-
feiture did not attach until the member is actually and
legally suspended and that he was entitled to notice and
to hearing, citing Puhr v. Grand Lodge, etc., 77 Mo.
App. 47.    The case of McMahon v. Maccabees, supra,
does not discuss the validity of laws like the one in hand.
In none of the above cases was a by-law like No. 197, of
the defendant order, brought under review, and in none
of them was it held beyond the power of a benevolent
beneficiary association, doing an insurance business, to

pass and enforce a law which *ipso facto* forfeits a beneficiary certificate for failure to pay any assessment made for the purpose of meeting death losses. The regular assessments levied by the defendant order to pay death losses are classified according to the age of the members. They are monthly and payable on or before the twenty-eighth day of each month. They are as regular as clockwork, are certain as to amount and time of payment, hence no special notice of their levy or of the amount or time of payment was necessary. A member holding a beneficiary certificate of the order, receives this notice once for all when he receives the certificate which, in effect, incorporates this law of the order into the contract of insurance, and a member, by accepting the certificate, agrees to pay the monthly assessments as required by Law 196, as a condition precedent to the continuance of his certificate in force. That it is competent for a beneficiary association, and a member thereof to so agree, it seems to us admits of no doubt and that such an agreement is just and fair to all the members of the order holding insurance certificates, is self-evident. A self-executing law of this kind was held valid in the following cases: Boyce v. Royal Circle, 73 S. W. 300, 99 Mo. App. 349; Borgraefe v. Knights of Honor, 22 Mo. App. 127; Harvey v. Grand Lodge A. O. U. W., 50 Mo. App. 472; Scheele v. State Home Lodge, 63 Mo. App. 277; Smith v. Knights of Father Matthew, 36 Mo. App. 184; Curtin v. Grand Lodge A. O. U. W., 65 Mo. App. l. c. 300; Zepp v. Grand Lodge A. O. U. W., 69 Mo. App. l. c. 493. In Modern Woodmen of America v. Tevis, 117 Fed. 369, it is said: "Stipulations to insure the prompt payment of the benefit assessments constitute the substance and the essence of insurance contracts of beneficial associations."

2. The learned trial court found the law (No. 197) requiring prompt payment, had been waived. It is well-settled law that the enforcement of a law to in-

sure prompt payment, may be waived by the order issuing the certificate of insurance. The evidence upon which the court found a waiver of the law, came from Walsh, the financier of Standard Lodge, No. 80. The laws of the order requiring the subordinate lodge to colject the monthly assessments from the members and to make remittances on the first day of the succeeding month to the grand recorder; if the remittances were not made by the eighth of the month, the law pronounced the subordinate lodge in default, and if not made by the fifteenth, the lodge stood suspended. Walsh testified that his practice was to make up the report and send it in with the assessments, anywhere from the first to the twelfth or thirteenth of the following month, and that at any time prior to sending in this report and remittance, his practice was to receive assessments from any delinquent member and report him as having paid the assessment, and that prior to September, 1900, he had frequently extended this favor to Patrick Lavin and continued him on the roll of membership in good standing, but there is not a syllable of evidence that the grand recorder, or any other grand officer of the order or the grand lodge, had any knowledge or information of this practice of Walsh of receiving assessments after the twenty-eighth of the month and then reporting them as having been paid on that day, nor is there any evidence that Walsh's lodge, as a body, had any knowledge of this practice of its financier, nor is there any evidence that the financier of any subordinate lodge, other than Standard Lodge, No. 80, indulged in this negligent benevolent practice toward his brethren of the order. There is, therefore, absolutely no evidence that the grand officers of the grand lodge ever knew or assented to this negligent practice of Walsh. Walsh was not appointed by the grand lodge or by any of its grand officers to collect assessments. The laws of the order made it the duty of the subordinate lodge to collect and remit assessments. Walsh's authority to make these collections

came from his local lodge and he was accountable to it, not to the grand lodge for his conduct. The fact that the local lodge used him as its officer to make the collections and remittances for it, did not transform him into an agent of the grand lodge, nor bind the latter by any habit he may have practiced in respect to such collections, nor impart notice to it of such habit. That the officer of a subordinate lodge, who is not even an agent of the grand lodge, has power to waive a by-law of the order, seems to us preposterous. That he can not do this, has been ruled in many cases. Borgraefe v. Knights of Honor, 22 Mo. App. 1. c. 141; Chadwick v. Order of Triple Alliance, 56 Mo. App. 463; Harvey v. Grand Lodge A. O. U. W., 50 Mo. App. 1. c. 477; McMahon v. Maccabees, 151 Mo. 522; Royal Society of Good Fellows, 153 Mass. 83; McCoy v. Roman Catholic Mutual Ins. Co., 152 Mass. 272; Miller v. Hillsborough Fire Assn., 42 N. J. Eq. 459; Royal Highlanders v. Scovills, 92 N. W. Rep. 206. Graves v. Modern Woodmen of America, 89 N. W. (Minn.) 6, is on all fours with the case at bar. There the clerk of the subordinate camp collected and forwarded the assessments and he, like Walsh, would collect assessments after the day they were due and report them as collected on the day they were due. It was held that this custom of the clerk was insufficient as a waiver, being unknown to the society. The same ruling was made in Boyce v. Royal Circle, supra. In similar circumstances, the Supreme Court of Virginia, in Knights of Honor v. Oeters, 95 Va. 610, held: ''The forfeiture of a certificate in a benefit society is not waived by the fact that the financial reporter of a subordinate lodge is in the habit of receiving payment of assessments after the end of the month for which they are levied, and within which they are payable, under the penalty of suspension and a forfeiture of the benefit certificate, when there is no evidence that the supreme lodge, which is sued on the certificate, is aware of such habit.''

3. The letter offered in evidence and purporting to have been written by the plaintiff, and evidently intended for the lodge of which Patrick Lavin had been a member, we think, should have been admitted in evidence. True, Mrs. Lavin testified that she did not write it, nor authorize its writing, but Walsh testified she came to him and asked him to intercede with the lodge in her behalf; that he told her to write a letter to the lodge; that afterwards the letter was handed to him, either by the plaintiff or one of her daughters. It was received and read in open lodge. It was an issuable fact, under this evidence, as to whether or not the plaintiff wrote the letter or had it written for her benefit. If she did write it and put it into the hands of Walsh to be presented to the lodge, it was very important evidence to support the second defense set up in the answer, viz., that Patrick Lavin abandoned the order several months prior to his death. If this letter is genuine, it, in connection with the fact that Patrick Lavin, for two-thirds of a year prior to his death, paid no monthly assessments and at no time made any effort to have himself reinstated, within the three or six months period allowed him by the laws of the order, after he must have known he was suspended for non-payment of monthly assessments, seems to us to be very convincing evidence that he had abandoned his connection with the order. State ex rel. v. Grand Lodge A. O. U. W., 78 Mo. App. 546; Glardon v. Supreme Lodge Knights of Pythias, 50 Mo. App. 45; Supreme Lodge K. P. W. v. Wilson, 66 Fed. 785; In re Hulitt, 96 Fed. Rep. 786. .

4. If the September, 1900, assessment was tendered Walsh on the third and fifth of that month, as Lavin's children testified it was, then there could be no forfeiture of the certificate of insurance for the non-payment of the assessment for that month, and the plaintiff is entitled to recover, unless the defendant is able to substantiate its second defense, which is that Lavin, after September, 1900, wholly abandoned the order. That

these issues of fact may be properly tried, the judgment is reversed and the cause remanded. *Reyburn* and *Goode, JJ.,* concur.