HAZEL CLAIR et al., Appellants, v. SUPREME COUNCIL OF THE ROYAL ARCANUM, Respondent.

St. Louis Court of Appeals, April 8, 1913.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Forfeiture of Benefit Certificate: By-laws Construed. A by-law of a fraternal beneficiary association provided that. if a member engage in a proscribed occupation, he "shall thereby and thereupon stand suspended" and shall forfeit his rights in the order and in the benefit certificate. Another by-law enjoined the duty upon an officer of the subordinate lodge to announce the suspension in the lodge, and enjoined the duty upon the secretary to record such suspension, with the date of the suspension and of the announcement, and to immediately notify the supreme secretary. *Held,* that the first by-law was self-executing, and that the act of a member in engaging in a proscribed occupation operated *ipso facto* to render the certificate void, where his death resulted from following such occupation; *held, further,* that the second by-law merely provided for making a record of the suspension, and did not require affirmative action to be taken by the subordinate lodge to suspend the member and avoid the certificate.

2. ————: ————: Validity of By-laws. It is competent for a fraternal beneficiary association and its members to provide in the contract of insurance and by-laws what occupations shall not be pursued, under penalty of forfeiture of the certificate.

3. ————: ————: Waiver. The payment of an assessment by a member of a fraternal beneficiary association, whose certificate was *ipso facto* forfeited by his engaging in a proscribed occupation, was not a waiver where the association, at the time of the payment, did not know of his being so engaged.

Clair v. Royal Arcanum.

4. ———: ———: ———. A forfeiture of a certificate issued by a fraternal beneficiary society, based on the member's engaging in a proscribed occupation, is not waived by conduct of the secretary of a local lodge, who had no knowledge of the forfeiture at the time.

5. ———: ———: ———: Authority of Local Officers. The acts of a mere ministerial officer of a subordinate lodge of a fraternal beneficiary association, wholly unauthorized by the association or its superior officers, are not binding on the association and may not be invoked as a waiver of its rights, and it is only when the act of the subordinate officer, unauthorized in the first instance, has been ratified, with knowledge of the facts, by the superior officers, that it may be so invoked.

6. ———: ———: ———: ———. In an action on a death benefit certificate issued by a fraternal beneficiary association, defended on the theory that the certificate was void by reason of the member's having engaged in a proscribed occupation, *held* that the secretary of the subordinate lodge had no authority to write certain letters to the beneficiary, relied on by her as constituting a waiver of the forfeiture, and, therefore, that the association was not bound thereby.

7. LIFE INSURANCE: Forfeiture of Policy: Estoppel: Fraternal Beneficiary Associations. An agreement or course of action on the part of an insurer leading a beneficiary to honestly believe that, by conforming thereto, a forfeiture of the policy will not be insisted on, followed by due conformity and the incurrence of expense in so doing, estops the insurer from thereafter insisting on the forfeiture; but this doctrine presupposes authority in· the person purporting to represent insurer, and an estoppel may not be invoked where the person acting had no authority to represent insurer and he acted without the knowledge or consent of the superior officers of insurer.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

. *O. D. Jones* for appellant.

*F. H. Bacon* for respondent.

NORTONI, J.—This is a suit on a certificate of life insurance. The finding and judgment were for defendant and plaintiffs prosecute the appeal.

Plaintiffs are beneficiaries designated in the certificate of life insurance which was issued by defendant September 15, 1909. Defendant is a fraternal beneficiary association, organized under the laws of Massachusetts, but duly qualified and licensed as such at and before the time the certificate in suit was issued, under the laws of this State as well.

There are several arguments advanced in the brief, but in the view we take of the case, but two questions need be considered. These present an inquiry as to whether or not defendant's by-law pertaining to proscribed occupations is self-executing; and if so, is it within the power of the secretary of the local council to which insured belonged to waive a forfeiture thereunder or estop the defendant from asserting it in defense, when there is nothing in the record indicating such secretary represented defendant or its superior officers?

Defendant having qualified under our statutes as a fraternal beneficiary association in this State, established certain subordinate lodges, among which was Hickory Council No. 766 Royal Arcanum, located in the city of St. Louis. The insured, Jesse Randolph, affiliated with this council and submitted to defendant his written application for a certificate of insurance in the amount of $1000, payable to the plaintiffs in the event of his death. His application was accepted and the certificate issued thereon by defendant on the 15th day of September, 1909. Among other things, the validity of the certificate and its payment are conditioned upon the fact that "the insured is in good standing in this order at the time of his death," etc.

At the time Randolph applied for the insurance and became a member of the order, he was employed as a painter in St. Louis, and so stated his occupation in the application. Defendant's by-law No. 272 proscribes a number of occupations and both inhibits the insurance of the lives of persons engaged therein and

forbids members insured to enter such occupations.
Among such proscribed occupations is that of a rail-
road switchman. It is obvious that this by-law per-
taining to proscribed occupations was in the contem-
plation of the parties at the time the contract was
entered into, for it appears in the insured's written
application that he expressly agreed to its terms as a
condition of the insurance. For himself and for any
person or persons accepting or acquiring any inter-
est in any benefit certificate issued on his application
or arising out of any membership therein, the insured
agreed expressly as follows: "That in case I shall,
within five years from and including the date of my
initiation enter upon or become engaged in a pro-
scribed occupation, . . . my benefit certificate shall
become and be null and void, and no person nor per-
sons be entitled to a benefit thereunder or under my
membership in the order." Shortly after becoming a
member of the order and taking out his insurance
therein, the insured, Jesse Randolph, went to St. Paul
in the State of Minnesota and there engaged in the
occupation of a railroad switchman. On March 26,
1910, while engaged as a railroad switchman in the em-
ploy of the Great Northern Railroad Company, the
insured came to his death as a result of such occupa-
tion. There is no controversy in the record touching
the relevant facts, for they appear in an agreed state-
ment, and the court found for defendant on the ground
that the insured came to his death while engaged in
such proscribed occupation, which, under defendant's
by-law and the contract of insurance, *ipso facto* for-
feited all right of recovery on the certificate.

But it is argued for plaintiffs that defendant's
by-law touching this matter is not self-executing and
that the insurance certificate remained valid until the
insured should be suspended by his council—that is,
Hickory Council No. 766, in St. Louis—which was never

done. So much of defendant's by-law as is relevant
to the question here involved is as follows:

"(1) A member who, during the first five years
of his membership, shall enter upon or become en-
gaged in a proscribed occupation, shall thereby and
thereupon stand suspended from all rights and privi-
leges in the order, cease to be in good standing, for-
feit all the rights and privileges of membership and in
his benefit certificate, which shall be void, and no as-
sessments or dues shall be received from him thereaf-
ter.

"(2) The regent shall announce the suspension
in the council. The secretary shall record the suspen-
sion, the date thereof, if known, and of the announce-
ment thereof, and immediately notify the supreme sec-
retary, giving the member's name, date and cause of
suspension, number of his benefit certificate, the pro-
scribed occupation upon which the member has entered
and the date the suspension was announced in coun-
cil."

There can be no doubt that this by-law is self-ex-
ecuting and that its violation operates to destroy the
insurance contract when it appears the death of the
member resulted as here from following such pro-
scribed occupation. The occupation of railroad switch-
man in which and because of which the insured came
to his death is proscribed in by-law No. 272 as one
against the hazards of which defendant does not un-
dertake to insure. The case concedes that the insured
came to his death while engaged in such an occupation
and because of that fact. The first subdivision of by-
law No. 272a, above copied, provides in plain terms
that if an insured member shall enter upon or become
engaged in a proscribed occupation, he *"shall there-
by and thereupon* stand suspended from all rights and
privileges in the order, cease to be in good standing,
forfeit all the rights and privileges of membership and
in his benefit certificate, *which shall be void,* and no

assessments or dues shall be received from him thereafter.'' By the very terms of this by-law, insured forfeited his good standing in the order upon entering the proscribed occupation, and the certificate of insurance requires as a condition of its payment that he should continue that status until the time of his death. It would be difficult to employ language more pointed and precise, to the end of terminating the insurance contract by engaging in a proscribed occupation than that above quoted, for it stipulates in plain language that *"thereby and thereupon* the member shall stand suspended from all privileges of the order, *cease to be in good standing, forfeit* all of his rights and privileges of membership and in his benefit certificate and that that *certificate shall become void.''* It is entirely clear that the by-law is self-executing, and the insured expressly agreed in his application to abide by its terms.

It is competent for fraternal beneficiary societies and their members to thus provide in the contract of insurance and by-laws, and the courts universally sustain and enforce such contracts as made. [Smith v. Knights of Father Mathew, 36 Mo. App. 184; Pauley v. Modern Woodmen, 113 Mo. App. 473, 87 S. W. 990; Lavin v. A. O. U. W., 104 Mo. App. 1, 78 S. W. 325; Borgraefe v. Sup. Lodge, 22 Mo. App. 127.] It is true it appears the insured paid his last assessment and dues on his membership and policy in the sum of sixty-five cents on or about the fifteenth day of March, 1910 while he was engaged in the occupation of a railroad switchman, but it is agreed in the case that at the time of the payment of said assessment defendant did not know of his being so engaged and, of course, no waiver may be predicated thereon in view of this fact.

It is true the second subdivision of by-law No. 272a, above copied, provides the regent shall announce the suspension in council, etc., its date, ''if known,'' and notify the supreme secretary giving the member's name, the cause of the suspension, number of the cer-

tificate, the occupation, etc., etc.; but these provisions
in no respect limit the operation of the prior subdi-
vision of the law, which summarily operates to sus-
pend the member from good standing and render his
certificate void upon entering the proscribed occupa-
tion.  It appears this provision has, for its purpose,
the matter of making a record, both in the council to
which the member belongs and in the supreme lodge,
touching the fact that the relations of the order with
the member have ceased and when and for what cause.
A scrutiny of this subdivision will reveal that it, too,
proceeds on the hypothesis that the member has been
theretofore suspended by the mere operation of the
first subdivision of the by-law, for the second subdivi-
sion provides the "regent shall announce the suspen-
sion in the council" as if the suspension has thereto-
fore occurred.  No proceeding against the member is
contemplated.  The next provision of this subdivision
is that the secretary shall record the date of the sus-
pension "if known," etc.  The whole tenor of this pro-
vision goes to show that it only prescribes certain for-
mula to go through after the council has learned that
the fact of suspension has been accomplished through
the operation of subdivision No. 1 of the by-law by
means of the insured entering into a proscribed occu-
pation.  The third subdivision of this by-law contem-
plates that a member desiring to enter a proscribed
occupation may submit all of the facts touching the
matter to the supreme secretary, and that after so
doing he may, with the consent of that officer and the
medical examiner, enter that occupation without sus-
pension.  Nothing of that kind occurred in this case
and, therefore, this provision is not before us for con-
sideration.  By the provisions of section 272b a mem-
ber about to enter upon a proscribed occupation may
prepare and file a waiver with the supreme secretary
of all rights on the certificate which may accrue as a
result of entering in such proscribed occupation.

Nothing of that kind is before us, and, though referred to in the brief, it may not be considered. These two provisions are wholly beside the case here for nothing was done by the insured under either.

It appears that after the insured met his death, J. C. Schall, secretary of Hickory Council, No. 766 in St. Louis, of which the insured was a member, wrote plaintiffs' mother several letters to the effect that the claim would be paid as soon as full and satisfactory proofs of death were made. At the time these letters were written, it does not appear that Schall, the secretary of the local council, had any knowledge whatever touching insured's occupation nor as to what occasioned his death. It appears that Schall was endeavoring to accumulate the facts touching the matter by writing to St. Paul, where the insured came to his death, and having certain affidavits made. In one of his letters to the plaintiffs' representative he said, "You may say to Mr. Clair as soon as I have the papers returned they will have prompt attention and be forwarded to our supreme secretary at Boston for payment, as soon as I hear from St. Paul, I will forward you several blanks to be filled out and affidavits made thereto." In another letter, the local secretary said, "I regret very much to cause you all this trouble and that we have not already been able to dispose of this case for settlement. If he had died in St. Louis a settlement of your claim would have been accomplished in a few weeks. The matter is having my attention and as soon as I can get all the proper blanks filled out, you will receive the draft accordingly." Because the secretary of the local council thus wrote plaintiffs' representatives after the death of the insured, it is insisted that the forfeiture of the insurance was waived, for it is said these letters manifest an intention to pay the amount notwithstanding that fact. Of this it would be sufficient to say the court found the fact to be otherwise. But to discuss it—there is naught in the case,

tending to show the local secretary had any knowledge
of the forfeiture at the time these letters were written,
and this alone would preclude a waiver on his part,
for the matter of waiver turns on the question of in-
tention and presupposes a knowledge of the facts per-
taining to the matter about which the waiver is in-
voked. Without knowledge concerning the facts of the
forfeiture, which it is said was waived, it is clear that
there could be no intention to waive it. [Francis v.
A. O. U. W., 150 Mo. App. 347, 130 S. W. 500.] But
to concede, for the purpose of the case, that Schall, the
secretary of the local council of St. Louis, knew the
facts pertaining to the forfeiture, the same result ob-
tains, for it was not within his power to waive defend-
ant's rights in the premises. Under the constitution
and by-laws it appears that, while such officers repre-
sent the order as to some matters—say, for instance, in
and about the collection of dues and assessments, etc.
—they are without authority whatever as to payment
of claims after the death of the member occurs. It is
only where the officers of the local council are acting
for the order with authority that they may be re-
garded as having waived its rights in the premises.
It is certain that the acts of a mere ministerial officer
of a subordinate lodge, which are wholly unauthorized
by the order or its superior officers, are not binding
upon the order and may not be invoked as evincing a
waiver of its rights. Such 'we understand to be the
accepted doctrine. [See Lavin v. A. O. U. W., 104
Mo. App. 1, 78 S. W. 325; Borgraefe v. Sup. Lodge
K. & L. of H., 22 Mo. App. 127; Harvey v. A. O. U.
W., 50 Mo. App. 472; Bacon, Benefit Societies (3 Ed.),
sec. 434a.] It is only when the act of such a subordi-
nate ministerial officer, unauthorized in the first in-
stance, appears to have been ratified, with full knowl-
edge concerning it, by the superior officers of the or-
der, that it may be invoked and successfully relied
upon as a waiver of the rights of the order touching

that matter. [See McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384; Bacon, Benefit Societies (3 Ed.), 434a.] There is not a semblance of evidence in the case tending to prove either that Schall, the secretary of the local council was acting with authority for the order in writing the letters above referred to or that the superior officers of the defendant were informed thereabout and thereafter ratified his acts. This being true, it is obvious that no waiver of the forfeiture may be predicated on his conduct in writing the letters.

It appears that in obedience to the suggestion of Schall in his letters, plaintiffs expended from two to five dollars and inconvenienced themselves somewhat in preparing affidavits and proofs of death to be transmitted to defendant through Schall. Because of this it is urged defendant is estopped to assert the forfeiture of the insurance. There can be no doubt of the general proposition that any agreement or course of action on the part of an insurance company which leads a beneficiary to honestly believe that by conforming thereto a forfeiture of the policy will not be insisted upon, followed by due conformity on the part of such beneficiary, so that expense and inconvenience are incurred, will and ought to estop the company from thereafter insisting upon the forfeiture, although it may be otherwise properly claimed under the express letter of the contract. [See Bacon, Benefit Societies (3 Ed.), sec. 431a.] But the doctrine thus stated presupposes authority in the person purporting to represent the insurance company as a predicate of the estoppel, and it is certain that it does not obtain where no such authority appears. The estoppel sought to be invoked here proceeds entirely from the fact that Schall, the local secretary, advised the beneficiaries to prepare the proofs and stated that a draft for the amount of the insurance would be forthcoming thereafter. It appearing, as it does, that Schall was without authority whatever to represent the defendant or-

der in this matter and that he acted throughout without the knowledge or consent of its superior officers, it ·is obvious that no estoppel may be invoked against the company because of his conduct. The judgment should therefore be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.