Argued November 21, decided December 2, rehearing denied December 30, 1913.

## SQUIRES *v.* MODERN BROTHERHOOD.

### (135 Pac. 774.)

**Insurance—Fraternal Beneficiary Insurance—Actions—Evidence.**

1. Evidence, in an action on a fraternal beneficiary certificate, *held* to present a *prima facie* case for plaintiff.

**Insurance—Complaint—Performance of Conditions Precedent.**

2. Under Section 88, L. O. L., providing that, in pleading the performance of conditions precedent in a contract, it shall not be necessary to state the facts showing performance, but it may be stated generally that the party duly performed all the conditions on his part, an allegation, in a complaint on a fraternal beneficiary certificate, that all the conditions of the contract had been fully performed on the part of the insured and the plaintiff, her beneficiary, was sufficient.

**Trial—Questions of Law or Fact—Direction of Verdict.**

3. Though generally it is for the jury to weigh oral evidence and determine the credibility of witnesses, yet, where there is no conflict in the evidence, the question is one of law, and the court may direct a verdict for one of the parties.

**Trial—Questions of Law or Fact—Direction of Verdict.**

4. It is only where the evidence is so conclusive that if a verdict should be found in opposition to it the court would, on motion for new trial, set it aside that the court may properly direct a verdict.

**Appeal and Error—Review—Questions of Fact.**

5. Where a verdict is not vitiated by errors in giving or refusing instructions, or in admitting or excluding evidence, or in some other way, the Supreme Court will not set it aside unless the court can say affirmatively that there was no evidence to support it.

Trial—Questions of Law or Fact—Direction of Verdict.

6.   Where both parties moved for a directed verdict, and there was lawful evidence to support a verdict for defendant, the direction of a verdict for plaintiff was error.

Insurance — Fraternal Beneficiary Insurance — Reinstatement of Suspended Members.

7.   Under by-laws of a fraternal beneficiary association authorizing reinstatement of members who have been suspended for nonpayment of dues, provided they are in good health at the time of reinstatement, a reinstatement obtained by a person not in good health, without the association's knowledge of his ill health, may be repudiated by the association, unless the association has waived the matter or is estopped to allege or prove it.

Insurance—Fraternal Beneficiary Insurance—Actions—Evidence.

8.   In an action on a fraternal beneficiary certificate, evidence *held* to present questions for the jury whether a member reinstated after nonpayment of dues was then in poor health and whether the association knew of it or had notice of it.

Insurance—Fraternal Beneficiary Insurance—Waiver of Provisions.

9.   A provision of a by-law of a fraternal beneficiary association disqualifying a person in ill health for reinstatement after nonpayment of dues may be waived by the association.

Insurance—Fraternal Beneficiary Insurance—Waiver of Provisions.

10.   When a fraternal beneficiary association, with knowledge of a delinquent member's ill health, receives her money and reinstates her and continues to receive her money from month to month, it waives the right to assert that the reinstatement was invalid.

[As to waiver of conditions in insurance policies requiring waivers to be indorsed in writing, see note in 107 Am. St. Rep. 99.]

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

This is an action by Sommers Squires against the Modern Brotherhood of America for the recovery of $1,000 alleged to be due on a contract of insurance. The plaintiff obtained, in the court below, a verdict and a judgment for the full amount claimed. The court below directed the jury to find a verdict for the plaintiff.                                    REVERSED.

For appellant there was a brief over the names of *Mr. Charles E. Lenon, Mr. John A. Jeffrey* and *Mr.*

*Clinton A. Ambrose,* with an oral argument by *Mr. Lenon.*

For respondent there was a brief over the names of *Mr. William E. Beckett* and *Mr. B. W. Graham,* with an oral argument by *Mr. Beckett.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

On September 10, 1907, the defendant, a fraternal beneficiary association maintaining lodges throughout the United States, issued to Lida J. Squires, the wife of the plaintiff, a contract of insurance upon her life for the sum of $1,000 and made said sum payable on her death to the plaintiff, as beneficiary. The said Lida J. Squires died on the eleventh day of January, 1912. The plaintiff, as beneficiary, brought this action to recover said sum of $1,000.

The complaint alleges the incorporation of the defendant; its issuance of the contract of insurance to Lida J. Squires; that she became a member of the said brotherhood and of Lily of the Valley Lodge No. 817, of said order, and makes a copy of said contract of insurance a part of said complaint. The complaint alleges also the following: "That all the conditions of said contract had been fully complied with on the part of said Lida J. Squires and her said beneficiary. That the said defendant has refused and still refuses to pay the sum stipulated to be paid to the said beneficiary in the event of the death of the insured or any part thereof, although demand for payment has been made by the said plaintiff." The complaint contains a demand for a judgment for $1,000.

The insured was 46 years old when she entered into said contract of insurance. We believe that there was no demurrer to the complaint. The defendant filed an amended answer to the complaint, admitting the death

of Lida J. Squires and the incorporation and organization of the defendant under the laws of the state of Iowa, and denying all the remainder of said complaint. The amended answer sets up five separate affirmative defenses.

The first defense alleges *inter alia* that the decedent made application for membership and a certificate of insurance in the defendant society and underwent a medical examination for said certificate of insurance, and that the decedent was accepted as a member of said society and of Lily of the Valley Lodge 817 thereof, and a benefit certificate No. 163,227 in the sum of $1,000, payable to the plaintiff herein, was on the tenth day of September, 1907, issued by the defendant and delivered to the decedent.

The amended answer alleges also that, by the terms of said certificate, it was contracted and agreed by the defendant and the decedent that said certificate was issued to said decedent in consideration of the payment by her of the membership fee, and one advance assessment, one month's *per capita* tax and the reserve fund dues in advance, and the representations, statements, and answers made in said application for membership, and based upon the medical examination of the decedent, and the same was further based upon and in consideration of the obedience, by the said decedent, to the articles of incorporation, the fundamental laws, by-laws, rules and regulations of the defendant society, which were in force at said time, or which might thereafter be adopted by the defendant society; and the application for membership included the physician's report of said physical examination; and it was understood and agreed therein that all of said papers and documents, taken together, constitute the exclusive contract between the decedent and the defendant society, and that decedent's right to a membership and to said benefit insurance certificate would and should

depend upon the truthfulness of said answers in said application and to the physician in said medical examination, and not otherwise, and, if the same or any part thereof should be untrue or fraudulent, that the said benefit insurance certificate should be considered as null and void and of no effect, and that decedent should and did thereby forfeit all payments made thereon.

The said amended answer alleges also that, upon said application and in said medical examination, the said decedent, among other things, represented to the said defendant society that, at the time of said application and medical examination, the said decedent was of sound physical condition and in good health, and further represented that she had no hip-joint disease, when in truth and fact the said decedent at said time was suffering from paralysis and had for a long time prior to said time suffered therefrom, and in truth and in fact the said decedent was at said time suffering from hip-joint disease, and the said decedent secured the said certificate of insurance fraudulently by falsely representing herself to this defendant society, in said application and examination, as a sound, healthy risk, and could not have secured the same had she truthfully stated to this defendant her sick and unhealthy condition.

The said amended answer stated also that said benefit insurance certificate No. 163,227, set forth in the complaint, is the same certificate procured fraudulently and unlawfully from the defendant by the decedent, as aforesaid, and that the same was and is void from the beginning, and neither said decedent nor the plaintiff, nor anyone else, are now or ever have been entitled to any benefit from the said defendant society, under and by virtue of said certificate by reason of the terms thereof, or by reason of said attempted reinstatements, or otherwise.

The decedent appears to have been suspended by the defendant three times for being in default in the payment of her dues to said society, and she appears each time to have paid up her said dues and to have been reinstated by the defendant, but the defendant claims that each reinstatement was obtained fraudulently and contrary to the by-laws of the defendant. Each of these suspensions and reinstatements is separately pleaded in the amended answer. The amended answer alleged in substance that, according to the by-laws of the defendant, it is expressly provided that members who have been suspended for nonpayment of dues and benefit assessments required to be paid by this defendant society might and could be reinstated by the payment, within 60 days from the date of such suspension, of all assessments, monthly contributions, dues and fines for which he would have been liable had he remained in good standing, providing that such member be and was in good health at the time of such reinstatement, and that in consideration of all of said agreements made in said application and examination by and between the said decedent and this defendant, and not otherwise, the defendant issued to the decedent, Lida J. Squires, benefit certificate No. 163,227, and thereafter the said decedent failed and neglected to pay said dues and assessments and was, on the 1st day of September, 1908, duly suspended therefor by the defendant, and thereafter, on the twenty-fourth day of September, 1908, the decedent, for the purpose of being reinstated as a member of the defendant, in good standing, made and delivered to the defendant a health certificate.

The answer sets out a copy of said alleged certificate wherein the decedent is said to have represented to the defendant that she was in sound condition and good health and that she had not since the date of her application for membership in the defendant sustained

any personal injury or been afflicted with any disease and sickness whatever, and this certificate provided that it was expressly agreed and understood that the reinstatement of the decedent should be null and void if the above-stated warrants and representations, or any of them, should be untrue.

The amended answer then alleges that the decedent, by means of said certificate, attempted to obtain a restoration to membership in good standing in said defendant society, and that said certificate was false and fraudulent, and that the decedent knew it to be false and fraudulent, and that the decedent was suffering from paralysis and had been so suffering for a long time prior to the making of said certificate; that said decedent could not have been reinstated as a member in good standing of the defendant if she had truthfully informed the defendant as to her condition of health; and that the decedent falsely and fraudulently obtained the said reinstatement by so misrepresenting her said condition of health to the defendant at the time that she was reinstated.

The answer asserts also that on two other occasions the decedent was suspended from membership in the defendant society for nonpayment of assessments, etc., and that she obtained reinstatement each time by means of false and fraudulent representations that she was in good health, when in truth and fact she was suffering from paralysis.

The evidence tends to prove that the decedent was not entitled to be reinstated as a member of the defendant society, according to the by-laws of the defendant, unless she was at the time of such reinstatement in good health. The reply denied about all the affirmative matter in the amended complaint and set up new matter. The reply claimed *inter alia* that the decedent, at each time that she was reinstated, paid to the defendant all assessments, dues, fines and charges in

full that she owed the defendant, and that the defendant accepted and retained the same, and pleads that, by reason of these facts, etc., the defendant is estopped to allege or prove that the decedent was suspended or that she was not in good health at the time that she paid her dues and assessments, etc.

The evidence tends to prove that the decedent had, at the time of her death, paid all dues and assessments of every kind that she had owed to the defendant, and the records of the defendant on their face showed her to be a member of the defendant in good standing.

When the evidence in chief of the plaintiff was in, the defendant filed a motion for a judgment of nonsuit, for the reason that the plaintiff had not made out a case sufficient to submit to the jury and for the reason that evidence failed to show that the decedent, during her lifetime, complied with the by-laws of the defendant in any respect; that the plaintiff's complaint does not state facts sufficient to constitute a cause of action; and that the complaint fails to allege that the said decedent paid her dues or performed the contract on her part.  The trial court overruled this motion, and the defendant assigns this as error.

1. The official reporter was not called into this case until after said motion was denied; and hence we have only a brief summary of the plaintiff's evidence.  The policy or contract of insurance was put in evidence, and there was evidence tending to show that the decedent had fully paid all assessments, dues, etc., that she had owed the defendant; that the decedent was a member of the defendant society and of its local lodge known as Lily of the Valley No. 817; and the plaintiff testified that the decedent and her beneficiary had performed all the conditions of said contract of insurance on their part to be performed; that proof of the death of the insured had been duly made; a receipt dated January 3, 1912, was identified and introduced show-

ing the payment of the last money due the defendant from the decedent; and that the payment of the $1,000 of insurance was demanded of the defendant by the plaintiff; and that said payment was refused, etc. We think that a *prima facie* case was made out by the evidence for the plaintiff.

2. The defendant contends, however, that the complaint does not state facts sufficient to constitute a cause of action, and that for this reason the judgment of nonsuit should have been granted. In an action on a contract it is necesary that the complaint allege that the plaintiff has duly performed all its conditions on his part, or, where performance of any of the conditions of the contract has been waived, such waiver should be pleaded.

In Well's Gould, Pleading, pages 361, 362, the author says:

"Whenever, therefore, the right of recovery depends upon a condition precedent, the declaration must aver the performance of it (or what is equivalent to performance) to entitle the plaintiff to recover. For in every such case performance of the condition or what the law holds equivalent to it is a constituent and indispensable part of the right of action, that without which there can be no cause of action."

Stephens, Pleadings, states the common-law rule thus:

"In pleading the performance of a condition or covenant, it is a necessary rule * * that the party must not plead generally that he performed the covenant or condition but must show specially the time, place, and manner of performance."

In his work on Code Pleading, Judge Bliss, in Section 301, says:

''The codes, on the other hand, provide that in pleading the performance of a condition precedent, in a contract, it shall not be necessary to state the facts showing performance; but it may be stated generally that the party duly performed all the conditions on his part.''

31 Cyc., pages 107, 108, says:

''When conditions precedent to a right of action exist, their performance must be alleged by plaintiff in order to state a cause of action; or where there has been no performance, and the plaintiff intends to rely upon matters excusing performance, such matters must be alleged. * * * A general averment that the plaintiff has performed all the conditions precedent to his right is not sufficient unless authorized by statute, but the performance of each condition must be specially shown.''

The fourth volume of the Encyclopedia of Pleading and Practice, pages 633, 634, says:

''It is provided by statute in many states that, in pleading the performance of conditions precedent in a contract, it is not necessary to state the facts constituting performance, but the party may state generally that he duly performed all the conditions on his part. The legal effect of the general averment is that the plaintiff has specially performed each and every act and thing required by the terms of the contract upon which the action is brought.''

Section 88, L. O. L., is as follows: ''In pleading the performance of conditions precedent in a contract it shall not be necessary to state the facts showing performance, but it may be stated generally that the party duly performed all the conditions on his part,'' etc.

See on this point the following cases: *Fisk* v. *Henarie,* 13 Or. 156 (9 Pac. 322); *Building Assn.* v. *Insurance Co.,* 29 Or. 574 (46 Pac. 366); *McInnes* v.

*Buchanan,* 53 Or. 537 (99 Pac. 929) ; *Rochester R. Co.*
v. *Robinson,* 133 N. Y. 246 (30 N. E. 1008) ; *American
Ins. Co.* v. *Leonard,* 80 Ind. 273.   The last-named case
was an action on a policy of insurance and the court
held that the following allegation in the complaint was
sufficient: ''And said plaintiff further says that he has
in all things observed and performed and fulfilled all
and singular the matters and things which were on
his part to be observed, performed and fulfilled, ac-
cording to the conditions, form and effect of said policy
of insurance.''

We hold that the complaint in this case states facts
sufficient to constitute a cause of action, and that the
motion for a judgment of nonsuit was properly over-
ruled.

3. When all the evidence was in, the plaintiff moved
the court to direct the jury to find a verdict for the
plaintiff, for the reason that the defendant failed to
make out any defense, and the counsel for the defend-
ant moved also that the court instruct the jury to
return a verdict for the defendant.   The court sus-
tained the motion of the plaintiff and instructed the
jury to find a verdict for the plaintiff.   The general
rule of practice is undoubtedly that it is the province
of the jury to weigh the effect of oral evidence and to
determine the credibility of witnesses, and that the
court cannot ordinarily interfere with this right.   But
where there is no conflict in the evidence, no dispute
as to the facts, there is nothing to submit to the jury,
and the question is one of law, to be decided by the
court.   When there is no conflict in the evidence, and
no dispute as to the facts, the court may properly in-
struct the jury to find a verdict which the undisputed
facts show one of the parties to be entitled to.

4. It is only when the evidence is of such a conclusive
character that if a verdict should be found in opposi-
tion to it the court would be compelled, on a motion

for a new trial, to set aside the verdict that the court may properly instruct the jury to find a specified verdict: *Conn. M. L. Ins. Co.* v. *Lathrop,* 111 U. S. 614 (28 L. Ed. 536, 4 Sup. Ct. Rep. 533); *Coffin* v. *Hutchinson,* 22 Or. 557 (30 Pac. 424); *Patty* v. *Salem F. M. Co.,* 53 Or. 350 (96 Pac. 1106, 98 Pac. 521, 100 Pac. 298); *Owens* v. *Snell,* 29 Or. 491 (44 Pac. 827); *Oregon R. & N. Co.* v. *Hertzberg,* 26 Or. 216 (37 Pac. 1019); *Crawford* v. *Hutchinson,* 38 Or. 578 (65 Pac. 84); *Patton* v. *Women of Woodcraft,* 65 Or. 33 (131 Pac. 521). In *Coffin* v. *Hutchinson,* 22 Or. 557 (30 Pac. 424), the court says: "A fair test in such a case is, if the jury, in the absence of a special direction, were to find a verdict the other way, ought it to be set aside?"

5. Where the verdict of a jury is not vitiated by errors of the trial court in giving or refusing to give instructions, or by admitting or excluding evidence, or in some other way, this court cannot properly set aside such verdict, unless the court can say affirmatively that there was no evidence to support it.

6. In this case, if there was any lawful evidence to support a verdict for the defendant, the trial court erred in directing the jury to find a verdict for the plaintiff.

7. The by-laws of the defendant provided that a person who has been suspended for nonpayment of assessments, etc., may be reinstated at any time within 60 days, provided that such person is in good health at the time of the reinstatement. The right to be reinstated, on payment of delinquencies, is conditional on the person's being in good health. A person not in good health has no right to reinstatement, and if a person not in good health is reinstated by the defendant, without the latter's knowing or having notice of the person's ill health, such reinstatement is wrongful, and the defendant has a right to repudiate it, on re-

ceiving knowledge or notice that such person was in poor health. If the decedent was not in good health when she was reinstated by the defendant, and the defendant did not know or have notice of that fact, her reinstatement was invalid and the defendant is not bound thereby, unless it has waived that matter or is estopped to allege or prove it.

8. Mary A. Brooks, a witness for the defendant, testified that the decedent had a stroke of paralysis in 1910.

Dr. W. O. Powell, a healer, who treated the deceased in the latter part of 1911, says that she was afflicted with paralysis. He says that she had had repeated attacks of this disease.

Mrs. Martilla E. Myers, a witness for the defendant, testified that the decedent was in perfect health when she became a member of the defendant, although she was a little lame, but she says that the decedent was sick for a year and a half prior to her death, and that her sickness was paralysis, and that it continued for about 18 months before her death.

The decedent seems to have been reinstated in May, 1911, and in August, 1911. The evidence referred to, *supra,* tends to prove that at both these dates she was ill of paralysis. If she was so ill at these times and that illness extended from the date of her death back 18 months, she was not entitled to be reinstated, under the by-laws of the defendant society, which are in evidence.

9. The provision of the defendant's by-laws providing that a person suspended could be reinstated within 60 days, unless that person was not in good health, was adopted for the benefit of the defendant and its members. The provision, which in effect disqualified a person in ill health for reinstatement, was adopted for the benefit of the defendant, and the defendant could waive that provision and permit a sick person to be

reinstated: *Insurance Co.* v. *Wolff,* 95 U. S. 329 (24 L. Ed. 387).

10. If the defendant had knowledge or notice of the decedent's poor health at the time that she was reinstated, and with such knowledge or notice received her money and reinstated her, and with such knowledge or notice continued to receive from her, until her death, assessments and dues as they fell due, from month to month, a jury would have a right to find from such facts that the defendant had waived all right to claim that such reinstatements were invalid or wrongful. If the defendant, with knowledge or notice that decedent's health was not good, received from her money to pay her delinquencies, and with such knowledge or notice reinstated her, and thereafter from month to month received from her her assessments and dues as they fell due, and treated her as a member in good standing, these facts constitute a waiver of all right on the part of the defendant to allege or prove that said reinstatements or either of them was wrongful or invalid.

But, if the defendant did not know or have notice that the defendant's health was not good when said reinstatements occurred and reinstated her with the understanding that her health was good, such reinstatements were invalid and not binding on the defendant, if her health was in fact not good at the time of such reinstatements.

The evidence tends to prove that the defendant's local agent received payments of assessments, etc., from the decedent and forwarded them to the home office of the defendant, but did not know or have notice that the defendant was in poor health. It is a question of fact, to be determined by a jury, from the evidence whether the decedent was in poor health when she was reinstated and whether the defendant knew it or had notice of it.

This court held in *Cranston* v. *West Coast L. Ins. Co.,* 63 Or. 427 (128 Pac. 427), that, where it is claimed that the insurance company has waived certain provisions of the contract of insurance, such waiver should be pleaded in the complaint. For this reason it may be necessary in this case to amend the complaint and plead such waiver, if the plaintiff desires to offer proof of the waiver of any of the terms of the insurance contract. There was evidence sufficient to require the case to be submitted to the jury. The court properly denied the defendant's motion for an instructed verdict, but erred in instructing the jury to find a verdict for the plaintiff.

The judgment of the court below is reversed and a new trial is ordered.  REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.