Argued October 5, reversed October 20, rehearing denied December 1, 1914.

# MATTHEWS *v.* TRAVELERS' INS. CO.

## (144 Pac. 85.)

**Insurance—Waiver of Forfeiture—Acceptance of Premium.**

1. In an action on an accident policy, the acceptance by the agent of the insurer of an overdue premium after an accident to insured, but without knowledge of the accident, cannot be considered.

**Insurance—Waiver of Forfeiture—Acceptance of Premium.**

2. The holder of an accident policy is chargeable with notice of a provision therein that the payment of a past-due premium only creates a liability for accidents occurring after the payment.

**Insurance—Forfeiture—Nonpayment of Premium.**

3. That an insurance agent, after insured had stated that he would not drop it if he could help it, said, "We will carry it for you for awhile," without surrendering the renewal receipt to the insured, does not constitute a renewal of the policy.

**Insurance—Waiver of Forfeiture—Retention of Premium.**

4. Where an accident policy provides that the payment of a past-due premium reinstates the policy as to injuries occurring after the payment, and insured, after making a payment after receiving an injury, informs the agent that he wishes to keep up the insurance, the insurer is not bound to return the premium, though it refuses to indemnify insured for the accident already sustained.

[As to when concealment or misrepresentation avoids the policy, see note in 35 Am. Rep. 629.]

From Multnomah: HENRY E. McGINN.

Department 2. Statement by MR. JUSTICE EAKIN.

This is an action by Edward L. Matthews against the Travelers' Insurance Company, upon an accident policy of insurance. The question involved is whether or not the policy was renewed. Plaintiff suffered an accident by the loss of an eye between December 22d and March 22d. He had obtained an accident policy on June 22d for three months, and renewed it on September 22d for an additional three months. About December 22d the policy was not renewed, but he contends that the agent, Kavanaugh, agreed that the com-

pany would carry the risk and keep the policy alive
for 30 days until he could renew it. The case was
tried before a jury, and from a judgment rendered
upon the verdict found therein, the defendant appeals.

REVERSED.

For appellant there was a brief over the names of
*Messrs. Carey & Kerr* and *Mr. C. A. Hart,* with an
oral argument by *Mr. Hart.*

For respondent there was a brief over the names of
*Mr. W. A. Carter* and *Mr. N. R. Jacobson,* with an
oral argument by *Mr. Jacobson.*

MR. JUSTICE EAKIN delivered the opinion of the
court.

1. There was proof offered tending to show the pay-
ment of the premium on the policy the same day, but
subsequent to the happening of the accident by which
plaintiff suffered his injury. There is an insuperable
obstacle to the court's giving any effect to the fact
that the premium was paid after the accident. At the
time of the payment of the premium—namely, Febru-
ary 13, 1913—the agent, Kavanaugh, delivered the re-
newal receipt to the plaintiff, but plaintiff did not
communicate to the agent the fact of the injury. He
simply phoned the agent to know whether or not the
policy was still in force, and, being informed that it
was, he sent the money down and obtained the renewal
receipt. In the first place we consider this was ob-
tained through fraud and deceit; that the plaintiff de-
liberately kept from the knowledge of defendant's
agent the fact of the accident; and that the money was
received by defendant's agent on the assumption that
no accident had happened. Common honesty and fair

dealing would have dictated to plaintiff that he should have notified the defendant of the accident when the money was sent to the agent, or when he called him up on the phone; and the fact that the payment of the premium was received by the agent after the accident and without knowledge thereof cannot be given any consideration on this issue. The merits of this case must be determined by the contract of renewal made on December 22, 1912, without reference to the payment made afterward.

2. Subdivision 9 of the policy states that the acceptance by the company or an agent thereof of a past-due premium shall reinstate the policy in force as to a disability resulting from an accident occurring after the payment shall have been made. Especially would this be true if an injury had been previously received of which the company had no notice. For the company to receive a past-due premium after an accident with the understanding that it would cover a liability for a previous accident which occurred while the premium was unpaid would have been to receive $15 as a consideration for a promise to forthwith pay plaintiff $2,500, by creating a definite liability for that amount, and not as a contingency or risk. At the time of the accident the plaintiff's testimony shows that he did not consider the policy would be in force until the payment would be made, and he phoned to the agent to know if his policy was still in force, and immediately sent the money. Plaintiff was chargeable with notice of the terms of the policy provision that the payment of a past-due premium creates a liability for accidents occurring after the payment. Plaintiff seems to rely upon the payment made on the 13th of February, and the argument is based upon that fact; but the payment is entitled to no consideration as it was received, so

far as the defendant is concerned, on a misconception of the facts.

3. The conversation claimed to be the renewal of the policy on December 20th is given by the plaintiff as follows:

'  "About the 20th of December, 1912, Mr. Kavanaugh came up * * where I was working, and he asked me if I was ready to pay the premium on my insurance policy.  I told him then that I didn't have the money to pay it at that time, and he then asked me when I would pay it, when I could pay it, and I told him that I wasn't sure just when I could pay it.  Mr. Kavanaugh then said, 'You are not going to drop it, are you?' and I said, 'No; not if I could help it.'  Mr. Kavanaugh then says to me, 'Well, we will carry it for you for awhile.'  I thanked him and told him that I would pay it as soon as I could, and he then went away."

If the agent was going to carry the policy for plaintiff, the renewal receipt must have been surrendered.  In another case, when asked if his policy was still in force, he answered: "Well, I understood that it was renewed."  This was not a statement of a fact.  It tends to show that he had no reason to think that he had renewed his policy, but was just making an attempt to continue an option thereon.  There was nothing said in the conversation by him and Kavanaugh that would be understood as creating a liability to pay, and would not bind the company.  It could not have enforced any remedy for the premium.  The fact that Kavanaugh did not deliver the renewal receipt would have been a complete defense to an attempt by the company to collect on that conversation.  The payment made on the 13th of February was plainly an after-consideration, and would not have been made but for the accident.

4. There has been a great deal said about the company returning the $15, but paragraph 9 of the policy is to the effect that payment of a past-due premium reinstates the policy as to injuries occurring after the payment. The plaintiff testifies that Mr. Kavanaugh asked him after the payment of the premium if he wished to keep up the policy, and he says he told him that he did. Therefore he was not entitled to the return of the money paid, as that was the only thing that could keep it alive.

Plaintiff urges that if there is any evidence in plaintiff's favor, the verdict should not be disturbed. The payment is not evidence that should be submitted to the jury; and the only other question that might in any circumstance be submitted to the jury would be evidence of a contract of renewal; but, as we have seen, that is insufficient to sustain a verdict.

There is no evidence that Kavanaugh's authority was sufficient to authorize him to waive the stipulations in the policy, nor was there any evidence that the company, either by word or act, waived its terms. No issue of that kind was set up or proved.

The judgment of the lower court is reversed, and the motion for nonsuit allowed.    REVERSED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McNARY concur.