Argued January 29, affirmed February 16, rehearing denied March 9, 1915.

# CLARKE-WOODWARD DRUG CO. *v.* HOT LAKE SANATORIUM CO.*

(146 Pac. 135.)

**Payment—Requisites—Payment by Note—Agreement.**

1. Accepting by a creditor of a note given by his debtor for the amount due is not a payment of the amount unless there is an agreement to that effect.

[As to what constitutes payment, within the law of application of payments, see note in Ann Cas. 1915B, 698.]

**Payment—Requisites—Payment by Note—Agreement.**

2. A note given by a debtor in trust for several creditors for the amount of their claims as a means of adjusting the items of the various accounts in the possession of the payee is not a payment of any claim, in the absence of an agreement to that effect, and an action was maintainable by a creditor on his claim.

**Novation—Elements of "Novation."**

3. A "novation" is a substitution of one obligation for another, and occurs by the exchange of a new party for an old one, or by commutation of a new agreement between the old parties, or it may be a simultaneous change both of parties and of agreement.

**Novation—Elements of Novation.**

4. Where, after an account was stated between a debtor and a creditor, the creditor agreed to accept in payment of the account stock of a corporation organized to take over and operate certain property, and the creditor received the stock but did not accept it because the corporation did not take over and operate the property, there was no novation, and the creditor could sue on the account stated.

---

*The authorities on the question of payment by commercial paper are collated in an extensive note in 35 L. R. A. (N. S.) 1.   See, also, note in 2 L. Ed. (U. S.) 450.   REPORTER.

Novation—Agreements—Rescission—Status Quo.

5.  Where a creditor, agreeing to accept in payment of his debt stock of a corporation organized to take over and operate certain property, received the stock but did not accept it because the corporation did not take over the property, but held the stock for a time at the request of the agent of the debtor, pending negotiations for a sale of the property, and, on no transfer being made, the creditor returned the stock to the agent, the delay in the return of the stock by the creditor did not change the rights of the parties, and the creditor could sue for the debt as against the objection that the debtor was not placed immediately in *status quo*, though the transaction as to the stock did not amount to a novation.

✎    [As to how and within what time rescission of contract may be exercised, see note in 74 Am. Dec. 657.]

Trial—Issues—Evidence—Submission to Jury.

6.  Where there is no conflict in the evidence, and no presumption or inferences can be deduced in aid of the defeated party, there is nothing to submit to the jury and the question is for the court.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.   Statement by MR. CHIEF JUSTICE MOORE.

This is an action by the Clarke-Woodward Drug Company against the Hot Lake Sanatorium Company to recover money.   The complaint for a first cause of action alleges, in effect, that the parties are corporations; that on May 16, 1911, an account was stated between them, and there was found to be due the plaintiff a difference of $3,112.47, which the defendant promised to discharge; that no part thereof has been paid except $249, and there is due $2,863.47, with interest from the time such balance was determined.   For a second cause of action, the initiatory pleading avers, in substance, that the plaintiff and Woodard Clarke & Co. are respectively corporations, and the defendant is also a corporation; that on May 16, 1911, an account was stated between the latter company and the defendant, and there was ascertained to be due such company $352.84 which the defendant promised to liquidate; that prior to the commence-

ment of this action Woodard Clarke & Co. assigned
such account to the plaintiff; that no part thereof has
been paid except $28.23; and there is due thereon
$324.61, with interest from the time of the accounting.
The answer admits the statements of accounts as al-
leged, but avers that prior to such settlements the
plaintiff and other creditors of the defendant assigned
their respective claims, amounting to $24,113.74, to
R. L. Sabin, to whom the defendant on May 16, 1911,
executed, in trust for the several creditors, its promis-
sory note for that sum, which included the demands
set forth in the complaint; that in June, 1911, the de-
fendant paid on such note $2,008, which sum was pro-
portionally disbursed to the several creditors; that in
January, 1913, an agent of the Hot Lake Home &
Sanatorium Company, a corporation which had suc-
ceeded to the property and rights of the defendant,
met with Sabin and the several creditors of the de-
fendant, including the plaintiff, when it was agreed
that the remainder due on the note should be paid by
issuing capital stock of the Hot Lake Home & Sana-
torium Company directly to the several creditors of
the par value of their then respective claims; that on
March 25, 1913, such stock was delivered, and the
plaintiff received certificates of the par value of the
remainder due on its stated accounts, accepting and
receiving such stock in full payment and satisfaction
of the demands set forth in the complaint. The reply
denied the averments of new matter in the answer,
and alleged that the plaintiff placed in Sabin's hands
its claims against the defendant; that on May 16, 1911,
the defendant, in order more easily to adjust such
demands, executed to Sabin the note specified, which
included the plaintiff's claims; that in June, 1911, the

defendant made, on account of such notes, payments of which the plaintiff received $249 as its *pro rata* share, but thereafter the defendant failed to pay the stipulated monthly installments; that on January 9, 1913, at a meeting of certain creditors of the defendant and Sabin, the defendant's agent represented that he was about to sell all its property to the Loyal Order of Moose, and that a new corporation, the Hot Lake Sanatorium Company, would be organized to take over the property which would be owned and operated by such society as a home for its members; that the defendant requested such creditors, including the plaintiff's agent, to subscribe for and take stock in the new corporation to the extent of their respective demands, which were embraced in the promissory note, such stock to be paid for by plaintiff and other creditors by a receipt in full of their demands; that the plaintiff's agent had no authority to agree to such offer or to accept any settlement except cash and the plaintiff did not assent to the proposal; that such brotherhood has never purchased the property of the defendant; that on March 25, 1913, the defendant mailed certificates of stock to the plaintiff which refused to sign a receipt therefor or to accept the stock. For further reply it is alleged that on June 10, 1913, the defendant and the new corporation, the Hot Lake Home & Sanatorium Company, leased for a term of two years the property of such corporation, whereby no remuneration will be received, and by reason thereof the defendant has rendered it impossible to perform the terms of the proposal which was made to the plaintiff and the other creditors. Based upon these issues, a trial was had, and the jury, pursuant to the court's direction, found for the plaintiff in the

sums demanded, and, judgment having been entered on the verdict, the defendant appeals.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Crawford & Eakin,* with an oral argument by *Mr. Thomas H. Crawford.*

For respondent there was a brief over the name of *Messrs. Yeager & Cornish,* with an oral argument by *Mr. R. G. E. Cornish.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. It is contended that the execution of the promissory note by the defendant to R. L. Sabin for a sum which included the demands of the plaintiff precludes it from maintaining this action, and for that reason errors were committed in directing a verdict for the plaintiff and in rendering the judgment given herein. "Nothing," says Mr. Chief Justice LORD, in *Black* v. *Sippy,* 15 Or. 574, "is better settled than that accepting a note is not payment of an account, nor is accepting one note in renewal of another payment of the old note, unless there is an agreement that the note should be accepted in payment." To the same effect, see *Kern* v. *Hotaling,* 27 Or. 205 (40 Pac. 168, 50 Am. St. Rep. 710); *Johnston* v. *Barrills,* 27 Or. 251 (41 Pac. 656, 50 Am. St. Rep. 717); *Schreyer* v. *Turner Flouring Co.,* 29 Or. 1 (43 Pac. 719); *Savage* v. *Savage,* 36 Or. 268 (59 Pac. 461); *Kiernan* v. *Kratz,* 42 Or. 474 (69 Pac. 1027, 70 Pac. 506); *Stringham* v. *Mutual Ins. Co.,* 44 Or. 447 (75 Pac. 822); *Cranston* v. *West Coast Life Ins. Co.,* 63 Or. 427 (128 Pac. 427).

2. The defendant's agent who executed the promissory note did not testify that the written instrument

was given in payment or discharge of the claims that had been left with Sabin for settlement, or that any agreement was entered into in respect thereto. Sabin, however, stated upon oath that the note was given and accepted, not as payment, but as a convenient means of adjusting the items of the various accounts that were in his possession. There was no conflict in the evidence as to whether or not the promissory note was given in liquidation of the plaintiff's account, and hence in an action thereon it was not erroneous, on this branch of the case, to direct a verdict for the plaintiff: *Jackson* v. *Brown,* 102 Ga. 87 (29 S. E. 149, 66 Am. St. Rep. 156).

3, 4. It is insisted that the capital stock issued by the defendant to the plaintiff was a novation which extinguished the original debt with all the rights incident thereto. A "novation" is a substitution of one obligation for another, and occurs by the exchange of a new party for an old, or by the commutation of a new agreement between the old parties, or it may be a simultaneous change both of parties and of agreement: *Miles* v. *Bowers,* 49 Or. 429 (90 Pac. 905). From the testimony it appears that no exchange of obligations was fully consummated, and hence no substitution was accomplished for the reason, as was said by Mr. Justice BURNETT in *Sharp* v. *Kilborn,* 64 Or. 371, 375 (130 Pac. 735, 736):

"It was at best an abortive novation inaugurated by the defendant, in which was wanting one requisite essential to bind the plaintiff, namely, the consent of the plaintiff himself."

It is evident, we think, that no novation ever occurred. The evidence shows that on March 25, 1913, the plaintiff received the certificates of capital stock

that had been issued in its favor, but refused to accept them because the Loyal Order of Moose had not purchased the defendant's property as its agent had represented, upon the faith of which declaration the plaintiff's agent had relied when it was generally understood that such evidence of corporate indebtedness would be issued in liquidation of the accounts as evidenced by the promissory note.

5. The plaintiff's agent testified that the stock was held for some time at the request of the defendant's agent, pending negotiations for a sale or disposition of the Hot Lake Sanatorium, and when no transfer thereof was made the stock was sent to the defendant's agent, who returned it, and thereafter this action was instituted. It is argued that the defendant was not immediately placed *in status quo,* and, this being so, an error was committed in rendering the judgment.

It is evident, we believe, that the delay which occurred in the respect mentioned was caused by the defendant's agent, so that no change of position resulted to either party in consequence thereof.

At the trial after the plaintiff had introduced its evidence and rested, and while a witness for the defendant was testifying, the court remarked that the jury would be instructed to find for the plaintiff; to which observation an exception was taken. Before a verdict was returned, however, the defendant introduced all the testimony it had to offer. It is argued that in thus determining the issues an error was committed.

6. When there is no conflict in the evidence and no presumptions or inferences can be deduced in aid of the defeated party, there is nothing to submit to the jury, and the question is one of law to be decided by the court: *Coffin* v. *Hutchinson,* 22 Or. 554, 557 (30 Pac. 424). In that case Mr. Chief Justice Strahan,

in announcing a rule by which to determine when a jury should be directed to find in favor of a party, says:

"A fair test in such case is, if the jury, in the absence of a special direction, were to find a verdict the other way, ought it to be set aside?"

To the same effect, see *Squires* v. *Modern Brotherhood,* 68 Or. 336, 347 (135 Pac. 774, 778), where the decisions of this court on that subject are collated.

From a careful examination of all the testimony given at the trial, a transcript of which is made a part of the bill of exceptions, it is evident that the jury were properly directed.

It follows that the judgment should be affirmed, and it is so ordered.        AFFIRMED.   REHEARING DENIED.

MR. JUSTICE BURNETT, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.