Argued April 12, reversed April 20, rehearing denied May 18, 1915.

## HARTMAN v. NATIONAL COUNCIL.*

(147 Pac. 931.)

**Insurance—Fraternal Benefit Insurance—By-laws—Validity.**

1. A by-law of a fraternal benefit insurance society, providing that the local officers shall be considered as agents of the members in accepting and transmitting payments for insurance, is valid.

> [As to law of beneficial associations, see note in 19 Am. St. Rep. 781. As to features of law especially applicable to mutual or membership life or accident insurance, see note in 52 Am. St. Rep. 543.]

**Insurance—Fraternal Benefit Insurance—By-laws—Validity.**

2. A by-law of a fraternal benefit society, providing that a member, suspended for nonpayment of dues, shall be reinstated only when in good health, and that the payment of arrearages shall be considered a warranty of good health, is valid, and a member should be held to a strict compliance therewith.

**Principal and Agent—Liability to Third Persons—Limitation of Agent's Authority.**

3. One who deals with an agent, knowing the limitations on his authority, cannot hold the principal for representations and acts of the agent in excess of his authority.

> [As to general rules respecting authority of agent, see note in 16 Am. St. Rep. 493. As to effect of limitation on agent's authority to waive conditions in insurance policy, see note in Ann. Cas. 1914a, 590. As to liability of principal for unauthorized acts of agent, see notes in 22 Am. St. Rep. 189; 88 Am. St. Rep. 779. As to personal liability of agent on contract executed without authority, see note in 50 Am. Dec. 793.]

**Insurance—Fraternal Benefit Insurance—By-laws—Waiver.**

4. Where the by-laws of a fraternal benefit society provided that a suspended member could not be reinstated, except while in good

---

*The cases passing upon waiver by officer of subordinate lodge of forfeiture for nonpayment of assessment are reviewed in the notes in 4 L. R. A. (N. S.) 421 and 38 L. R. A. (N. S.) 571.    REPORTER.

health, and that the local officers had no authority to waive the provisions of the by-laws, the acceptance by the local officers of a payment of arrearages of a suspended member, with knowledge that the member was at that time sick, does not waive the provisions of the by-laws and reinstate the member.

.   [As to waiver of forfeiture for nonpayment of assessments or dues by acceptance of arrearages or similar acts, see note in Ann. Cas. 1914C, 437.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

This is an action by May E. A. Hartman, now May E. A. Osmund, and George H. G. Hartman, who were children and beneficiaries of Johanna H. Hartman, to recover upon a certificate of membership issued by the defendant corporation insuring her life for their benefit in the sum of $1,000.   They allege full performance by the assured of all things required of her by the contract, demand of the amount after the death of their mother, and the defendant's refusal to pay. The certificate is made part of the complaint, and its execution and delivery are admitted.   The answer interposes two defenses.   The first is in substance that the action was not brought within one year after the rejection of the claim, such shortening of the statute of limitations being one of the terms of the agreement. The second is to the effect that the insured failed to pay her dues to the defendant, whereby she was automatically suspended, during which suspension she became sick of typhoid fever, complicated with uremia, of which she subsequently died; that by the laws of the defendant, made part of the contract by the parties, her sickness made her ineligible for reinstatement; that although during her illness, her arrearages were paid to the defendant, yet it was without the knowledge of the latter that she was sick, and, on discovery of the same for the first time after her death, the

money so paid was tendered to the plaintiffs and by them refused.  After many denials for want of information and belief, the reply in substance alleges a waiver by the defendant of the condition of the policy mentioned, basing it upon certain alleged conversations which one of the plaintiffs had with the financier of the local council.  The result of a jury trial was a verdict for the plaintiffs, and from the ensuing judgment the defendant appeals.

Reversed and Remanded.

For appellant there was a brief over the names of *Messrs. Christopherson & Matthews,* with an oral argument by *Mr. Q. L. Matthews.*

For respondents there was a brief over the names of *Mr. John Ditchburn* and *Messrs. Hansen & Mc-Ginniss,* with oral arguments by *Mr. A. Hansen* and *Mr. Ditchburn.*

Mr. Justice Burnett delivered the opinion of the court.

The contention here is waged around the representations imputed to the financier of the local council, and the motion for a directed verdict at the close of all the testimony.  Many other errors were assigned, but all depend upon the rulings of the court upon these two questions.

The evidence shows that the defendant is a mutual fraternal organization, with ritual, secret work and social features, combined with the element of insurance of its members.  It consists of a national body, the defendant, of district conventions, and of local organizations.  The local concerns elect their own officers by vote of their members.  They also elect repre-

sentatives to district conventions, and these in turn elect delegates to the national council, which enacts the laws governing the institution and its membership. Certain conditions of the certificate upon which the action is founded are here set forth:

"3. This certificate is issued in consideration of the warranties and agreements made by the person named in this certificate in said member's application to become a member of this order and in said member's medical examination, and also in consideration of the payments made when initiated as a member, and said member's agreement to pay all assessments and dues to become due during the time said member shall remain a member of this order. * *

"6. This certificate and contract is and shall be subject to forfeiture for any of the causes of forfeiture which are now prescribed in the laws of the order, or for any other cause or causes of forfeiture which may be hereafter prescribed by this order by the amendment of said laws."

The laws of the order, pleaded and read in evidence, and against which there is no contradictory evidence, contained these provisions:

"Suspensions.

"Sec. 112.   Members Supended by Their Own Act. —The financier of each subordinate council shall keep a book wherein all regular and special assessments and dues received from each member holding a valid certificate shall be credited. Such entries shall be made showing the date when actually received by the financier. All assessments for every month shall become due and payable on the first day of the month. The certificate of each member who has not paid such assessment or assessments and dues on or before the last day of the month shall, by the fact of such nonpayment, stand suspended without notice, and no act on the part of the council or any officer thereof, or of the national council, shall be required as essential to such suspension, and all rights under said certificate shall

be forfeited. No right under such certificate shall be restored until it has been duly reinstated by the member complying with the laws of the order, with reference to reinstatement. * *

"Reinstatements.

"Sec. 113. How Reinstated.—Each member who has been suspended for nonpayment of dues or nonpayment of an assessment or assessments shall only be reinstated in accordance with the constitution and laws of the order.

"Sec. 114. How a Member may be Reinstated within Sixty Days.—Any beneficiary member suspended by reason of nonpayment of an assessment or assessments, or dues, may within sixty days from the date of such suspension be reinstated upon the following conditions and none other, viz.: If not engaged in any of the prohibited occupations mentioned in Section 107 of these laws, he may be reinstated by payment, within sixty days from date of suspension, of all arrearages of every kind, including assessments and dues, for which he would have been liable had he remained in good standing: Provided, however, that he be in good health at the time of making payment to the financier with a view of reinstatement. The payment of any such assessments and dues for reinstatement shall be a warranty by such member that he is in good health at the time of such payment. Provided, further, that the receipt and retention of such assessments and dues, in case the suspended member is not in good health, or is engaged in a prohibited occupation, shall not have the effect of reinstating said member or of entitling him or his beneficiaries to any rights under his benefit certificate. * *

"Sec. 117. Suspended or Expelled Member Forfeits All Rights.—Any member suspended or expelled from the order for any cause whatever forfeits all claims to the beneficiary fund, reserve fund, general fund and all other funds of the order during said suspension or expulsion. * *

"Sec. 120. National Council not Bound by an Illegal Receipt.—The national council shall not be bound

by the acceptance of arrears of assessments and dues
from suspended members who are not entitled to rein-
statement in accordance with the laws of the order.
The receiving of such arrears and receipting therefor
by an officer of a subordinate council, the national sec-
retary, or by any other person, or the payment by or
on behalf of any suspended member, of arrears of
assessments and dues with a view to reinstatement ex-
cept as provided for in the laws of the order, shall not
be binding on the national council.    The failure of any
financier to report to the national council as suspended
any suspended member of his council shall not operate
in any case as a waiver of the forfeiture occurring on
account of the suspension.    The retention by the finan-
cier, or by the order, of assessments and dues paid by
members or for them with a view to reinstatement
other than as provided in the laws of the order, either
before or after death, shall not constitute a waiver of
any provisions of these laws until a demand has been
duly made for their return by such member, or his
beneficiary, or legal representative.

"Sec. 120.    (a) National Council not Bound by
Knowledge of or Notice of Officers or Members of
Local Councils.—No officer of this society nor any
local council officer, or member thereof, is authorized
or permitted to waive any provisions of the by-laws
of this society, which relate to the contract between the
member and the society whether the same be now in
force or hereafter enacted.    Neither shall any knowl-
edge or information obtained by or notice to any sub-
ordinate council or officer or member thereof, or by or
to any other person, be held or construed to be the
knowledge or notice to the national council or the
officers thereof, until after said information or notice
be given in writing to the national secretary of the
order."

It appears without dispute that the decedent did not
pay her assessments for the months of May and June,
1912, during those months, and that they were not paid
for her until July 12th of that year, at which last date

she had been sick in the hospital for several days, afflicted as before stated. The payments were made by her daughter, one of the plaintiffs, who testifies that she told the local financier that her mother, the insured, was sick, and that he, having the knowledge thus imparted, accepted the arrearages which she paid. There is no testimony whatever tending to show that information of the sickness of the insured was in any way communicated to the principal officers of the defendant. She never recovered from her illness, but died at the hospital August 2, 1912. Proofs of her death were forwarded to the defendant at Topeka, Kansas, and seasonably thereafter its executive committee, in whom the laws of the order vested the authority during the recess of the grand council to approve or reject such claims, addressed to the plaintiffs this letter, under date of October 11, 1912:

"The claim made on account of the death of your mother was considered by our executive committee at its session yesterday and unanimously rejected. The proof shows that your mother did not pay May or June, 1912, assessments and dues within the month, but that on July 12th there was paid for her the three months, May, June, and July, at which time she was ill with typhoid fever and uremia, and under our law could not reinstate, and the payment to the financier, she not being in good health, did not reinstate her. This information did not come to our attention until the proof was in. Under the circumstances, she was not a member of the society at the time of her death, and therefore there was no liability on account of the certificate. The assessments paid since she was not entitled to reinstate will be handed you by our deputy, Brother W. E. Cummings, who is acting in this matter at our instance and request."

Signed by the national secretary.

The evidence also shows that the amount mentioned was tendered to each of the plaintiffs, and was by both

of them refused, prior to the commencement of the action.    Another section of the laws of the order reads thus:

"Sec. 169.    Council is Member's Agent.—A subordinate council and its officers are the agents of its members in making application for membership, admission of members, the reinstatement of members, the collection and transmission of all assessments to the national council, the serving of all notices upon its members whether such notices are required by the laws of the order, or whether they have been adopted by custom ˚of the subordinate council or its officers. The national council shall not be liable for any negligence in any of these matters, nor be bound by any irregularity, neglect or illegal action by a subordinate council or by any of its officers."

1.  The facts indicated by the excerpts from the testimony here given are undisputed.    The question is: What is the legal conclusion to be drawn from those uncontroverted facts?    Some courts have gone so far as to say that, notwithstanding the laws of the order and the stipulations of the parties to be bound by them, yet the local officers are the agents of the chief organization of the order, and not of the members or the local council.    Such is the rule laid down in such cases as *Dromgold* v. *Royal Neighbors,* 261 Ill. 60 (103 N. E. 584), and *Dougherty* v. *Foresters,* 125 Minn. 142 (145 N. W. 813), and other precedents which might be noticed.    The great weight of authority, however, is to the effect that it is competent for parties to enter into a contract such as is here set out and embodied in the certificate and laws of the order. There is nothing contrary to public policy or in violation of any public law in making such a stipulation. There is good reason for making the officer of the local council the agent of the member, for that official

is elected by the vote of the members, and, being so chosen, it is competent for the parties to stipulate against a possible favoritism to be shown by the officer to the person who elects him as against the general membership of the order.

2. It is also sound policy to hold a member to strict compliance with the laws of the order respecting the payment of dues and the regulation requiring the applicant for reinstatement to be at the time in good health. The insurance in these fraternal institutions is temporary in its character, and its stability depends upon exact observance of the rules for payment. The contract is not purely between the individual member and the corporate organization. It is in spirit and in truth a covenant, not only with the central body, but with every other individual participating in the benefits afforded by the project, for the concern is mutual, and the co-operation of every member is essential to its success as an insurance society. The assured cannot take chances and make default during good health, and afterward, when death threatens, come forward with the arrearages and claim the insurance. None the less, under such circumstances, can the beneficiary at the eleventh hour take up a project which the assured has abandoned and expect to profit thereby. The situation is analogous to the one condemned by Mr. Justice EAKIN in *Matthews* v. *Travelers' Ins. Co.*, 73 Or. 278 (144 Pac. 85), where the plaintiff, holding an accident insurance policy, allowed the same to lapse, and, after having lost an eye, sent his overdue premium to the company without informing it of his misfortune. A recovery on the policy was denied. In *Lathrop* v. *Modern Woodmen of America*, 56 Or. 440 (106 Pac. 328, 109 Pac. 81), it was held by this court that:

The "by-laws of a beneficial association, expressly providing that no local camp or any officer thereof shall waive any provisions of such by-laws, are binding, and render an attempted waiver illegal''; and "where the by-laws of a beneficial association provided that the certificate should not be effective until delivered to the applicant while in good health, and his adoption into the order, and his payment of dues and assessments, the failure of an applicant to pay, while in good health and before the accident, the dues and assessments, defeated a recovery on the certificate, and a payment after the accident to the local clerk was not binding on the association, in the absence of a showing that it had knowledge thereof and acquiesced therein.''

It may be noted that at a subsequent trial of this case a recovery was had, which was sustained in the opinion of Mr. Justice McBRIDE, reported in 63 Or. 193 (126 Pac. 1002), but upon the fact, developed in the second trial, that the member had never been in default, and the doctrine that, the right to the policy having been established, placing it in the hands of anyone for delivery, the actual passing from hand to hand only remaining to be accomplished, was tantamount to delivery as against the defendant. The principles announced in the first opinion were not disturbed by the later decision.

Again, in *Squires* v. *Modern Brotherhood*, 68 Or. 336 (135 Pac. 774), the court, speaking by Mr. Justice RAMSEY said:

"But, if the defendant did not know or have notice that the defendant's health was not good when said reinstatements occurred, and reinstated her with the understanding that her health was good, such reinstatements were invalid, and not binding on the defendant, if her health was in fact not good at the time of such reinstatements.''

3. It is elementary that, if one dealing with an agent has knowledge of limitations on his authority, the representations or acts of the latter contrary to his instructions will not be binding upon the principal, unless with knowledge of all the facts the principal either waives the disobedience of the agent or adopts his acts. In the exhaustive opinion of Mr. Justice SHIRAS of the United States Supreme Court in *Northern Assur. Co.* v. *Grand View Bldg. Assn.,* 183 U. S. 308 (46 L. Ed. 213, 22 Sup. Ct. Rep. 133), the subject of agency for an insurance company was carefully considered. The claim there was that the condition against other insurance had been violated by the insured. It was shown that knowledge of the outstanding insurance was brought home to the agent of the company; but was part of the policy in question that:

"No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed herein or added thereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The opinion goes on to state that:

"The plaintiff's case stands solely on the proposition that because it is alleged, and the jury have found, that the agent had notice or knowledge of the existence of insurance existing in another company at the time the policy in suit was executed and accepted, and received the premium called for in the contract, thereby the insurance company is estopped from availing itself of the protection of the conditions contained

in the policy. In other words, the contention is that an agent, with no authority to dispense with or alter the conditions of the policy, could confer such power upon himself by disregarding the limitations expressed in the contract; those limitations being according to all the authorities presumably known to be insured. It was not shown that the company, when it received the premium, knew of the outstanding insurance, nor that, when made aware of such insurance, it elected to ratify the act of its agent in accepting the premium. * * So that there is not the slightest ground for claiming that the insurance company, with knowledge of the facts, either accepted or retained the premium. The plaintiff's case, at its best, is based on the alleged fact that the agent had been informed, at the time he delivered the policy and received the premium, that there was other insurance. The only way to avoid the defense, and escape from the operation of the condition, is to hold that it is not competent for fire insurance companies to protect themselves by conditions of the kind contained in this policy. So to hold would, as we have seen, entirely subvert well-settled principles declared in the leading English and American cases, and particularly in those of this court."

It was lawfully competent for the defendant to forbid the local officer to waive the conditions mentioned, for Section 20 of the act of the legislative assembly of date February 23, 1911 (Laws 1911, p. 363), "for the regulation and control of fraternal benefit societies," reads thus:

"Waiver of the Provisions of the Laws.—The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

4. In this case there is no evidence, as stated, to show that the local officer, who accepted the arrearages, or anyone, ever communicated to the principal officers of the defendant anything concerning the sickness of the assured. On the contrary, the only evidence on that subject is to the effect that the first knowledge they had of it was derived from the proofs of death, based upon which they immediately rejected the claim and offered to repay the arrearages which had been advanced. Moreover, controlled as she was by the terms of her certificate and the laws of the order, which are made a part thereof, and to which she was subject, having had her part in the enactment of the same through her representatives, the assured was bound to take notice of the limitations upon the authority of the local officer, although for some purposes he might be held to be the agent of the defendant. The beneficiaries can take nothing by reason of the agent's violation of his instructions. The following precedents are illustrative of the conclusion here set down: *Woodmen* v. *Jackson,* 80 Ark. 419 (97 S. W. 673); *Supreme Commandery* v. *Bernard,* 26 App. D. C. 169 (6 Ann. Cas. 694); *Sheridan* v. *Modern Woodmen of America,* 44 Wash. 230 (87 Pac. 127, 120 Am. St. Rep. 987, 7 L. R. A. (N. S.) 973); *Hay* v. *People's Mut. Ben. Assn.,* 143 N. C. 256 (55 S. E. 623); *Gifford* v. *Workman's Benefit Assn.,* 105 Me. 17 (72 Atl. 680, 17 Ann. Cas. 1173); *Showalter* v. *Modern Woodmen of America,* 156 Mich. 390 (120 N. W. 994); *Grand Lodge A. O. U. W.* v. *Taylor,* 44 Colo. 373 (99 Pac. 570); *Bixler* v. *Modern Woodmen of America,* 112 Va. 678 (72 S. E. 704, 38 L. R. A. (N. S.) 571); *Royal Highlanders* v. *Scovill,* 66 Neb. 213 (92 N. W. 206, 4 L. R. A. (N. S.) 421); *Modern Woodmen* v. *Tevis,* 54 C. C. A. 293 (117 Fed. 369); *Clair* v. *Supreme Coun-*

*cil,* 172 Mo. App. 709 (155 S. W. 892) ; *Jones* v. *Modern Brotherhood,* 153 Wis. 223 (140 N. W. 1059) ; *Knode* v. *Modern Woodmen of America,* 171 Mo. App. 377 (157 S. W. 818) ; *Commercial Travelers* v. *Young,* 212 Fed. 132 (128 C. C. A. 648).

The only conclusion to be drawn from the uncontradicted testimony was that at the time the arrearages were paid the assured was not eligible for reinstatement; that the payments made for her amounted under the laws of the order to a warranty that she was then in good health; that, although the local official may have known that this was not true, yet there is nothing to show that the controlling officers of the defendant knew anything about the state of her health; and that promptly upon the same being brought to their attention they repudiated her claim, as of right they could, and offered to return to her beneficiaries the amount paid for her. The deduction which the law makes in such a case is favorable to the defendant, and a verdict should have been directed accordingly.

It is not necessary to consider the other defense depending upon the agreed limitation of the time within which an action should be instituted.

The judgment of the Circuit Court is reversed and the cause remanded, with directions to enter judgment for the defendant.        REVERSED AND REMANDED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.